UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

**AUG 2 8 2017**

CLERK

---

JAMES ELMER SHAW,
          Plaintiff,

Civ. No. 17-4116

v.

DENNIS KAEMINGK (Secretary of Corrections);
ROBERT DOOLEY (Director of Prison Operations);
DARIN YOUNG (Warden); JENNIFER DRIESKE
(Deputy Warden); JENNIFER STANWICK-KLEMIK
(Deputy Warden); TROY PONTO (Associate
Warden); Arthur Alcock (Associate Warden);
DAVID LENTSCH (Unit Manager); DERRICK
BIEBER (Unit Manager); AL MADSON (Unit
Manager); JOSH KLEMINK (Unit Manager);
TAMMY MERTINS-JONES (Cultural Activities
Coordinator); ELIZABETH VITETTA (Unit
Coordinator); BRITNEY ULMER (Unit
Coordinator); MELISSA MATURAN
(Administrative Remedy Coordinator); STEVE
BAKER (Major); LINDA MILLER-HUNHOFF
(Mail Supervisor); SHARRON REIMAN
(Mailroom); J. STORUICK (Mailroom);
DEREK ANDERSON (Correctional Officer);
PRESTON PERRET (Correctional Officer);
JUDY PLOOSTER-JACOBS (Correctional Officer);
LISA FRASIER (Correctional Officer); NICK
REDDMAN (Teacher); MARY CARPENTER (MD);
ER REGIER (MD); BRAD ADAMS (PA-C);
JESSICA SCHREURS (RN); HEATHER
BOWERS (RN); UNKNOWN DEPARTMENT OF

VERIFIED COMPLAINT

WITH JURY DEMAND

HEALTH/CORRECTIONAL HEALTH
SERVICE (DOH/CHS) EMPLOYEES);
YANKTON MEDICAL Clinical®, P.C.;
BRENT ADAMS (MD); CBM
CORRECTIONAL FOOD SERVICES (CBM);
JOHN TWEIRWEILLER (CBM DISTRICT
MANAGER); UNKNOWN CBM
EMPLOYEES); DELMER "SONNY"
WALTER (CONTRACTED DOC ATTORNEY);
CATHERINE SCHLIMGEN (CONTRACTED
DOC ATTORNEY); MARK BIDNEY
(CONTRACTED DOC PARALEGAL); and
GLOBAL TEL * LINK (GTL),

      Defendants.

---

COMES NOW, James E. Shaw # 23338, Plaintiff pro se, who presents the following civil-rights complaint and claim for compensatory, declaratory, and injunctive relief.

Plaintiff's claim for injunctive relief is authorized pursuant to 28 U.S.C. § 2283 and 2284.

## JURISDICTION AND VENUE

1. Jurisdiction and Supplemental Jurisdiction is asserted pursuant to the United States Constitution and 42 § 1983, to redress the deprivation of those rights secured by the United States Constitution, deprived by persons acting under color of state law. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3), 42 U.S.C. § 12133 and 28 U.S.C. § 1367 (a).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2), including that the events and omissions giving rise to this action occurred in the Southern Division of the District of South Dakota.

PARTIES

3.    At all times pertinent to this action, Plaintiff James Elmer Shaw #23338 was an inmate under the care of the South Dakota Department of Corrections (DOC) and those contracted by the DOC, Defendants, below;

4.    Denny Kaemingk is the Secretary of Corrections for the DOC who's duties include, but are not limmitted to, he is the final authority over DOC Policies, contracts and administrative remedies;

5.    Robert Dooley is the Director of Prison Operations for the South Dakota DOC and Warden at Mike Durfee State Prison (MDSP) in Springfield South Dakota.

6.    Darin Young is the Warden at the South Dakota State Penitentiary (SDSP) in Sioux Falls and is a policy maker for the DOC.

7.    Jennifer Drieske (nee Wagner) is the Deputy Warden (DW) at SDSP and is the over'all Cultural Activities Coordinator (CAC) for all DOC facilities in South Dakota who approves or denies religious project applications/requests.

8.    Jennifer Stanwick-Klemik is the DW at MDSP and is in charge of Cultural Activities at MDSP.

9.    Troy Ponto is an Associate Warden (AW) at SDSP.

10.    Arthor Allcock is an AW at SDSP.

11.    David Lentsch is a Unit Manager (UM) at SDSP.

12.    Derrick Bieber is a UM at SDSP.

13.    Al Madson is a UM at SDSP.

14.    Josh Klemik is a UM at MDSP.

15.    Tammi Merten-Jones (nee Hillan) is a CAC at SDSP.

16. Elizabeth Vitetta is a Unit Coordinator at SDSP.

17. Britney Ulmer is a Unit Coordinator at MDSP.

18. Melissa Maturan is the Administrative Remedy Coordinator (ARC) who is responsible for investigating and responding to inmate Administrative Requests; which is the second stage of the DOC grievance process.

19. Steve Baker is a Major who is responsible for the operation of the SDSP Mailroom, in other.

20. Linda Miller-Hunhoff is a Mailroom Supervisor at SDSP.

21. Sharron Reimann is a Mailroom officer at SDSP.

22. J. Storevik is a Mailroom officer at SDSP.

23. Derek Anderson is a Correctional Officer (CO) at SDSP.

24. Preston Perret is a CO at SDSP.

25. Judy Jacobs (nee Plooster) is a CO at SDSP.

26. Lisa Frasier is a CO at SDSP.

27. Nick Reddman is a tutor in the School at SDSP.

28. Dr. Mary Carpenter is a private Medical Director contracted by the DOC whose office is in Pierre, South Dakota. Carpenter is the final decision maker who decides whether inmates receive medically necessary surgeries or treatments from outside medical doctors.

29. Dr. E.R. Regier is a private Medical Doctor contracted by the DOC to provide medical care to inmates at SDSP and MDSP.

30. Brad Adams is a private Physician's Assistant (PA) contracted by

the DOC to provide medical care to inmates at MDSP.

31. Jessica Schreurs is a Clinical Supervisor of Health Services at SDSP contracted by the DOC to provide medical care to inmates.

32. Heather Bowers is a Registered Nurse (RN) contracted by the DOC to provide medical care to inmates at SDSP.

33. Unknown Correction Health Services (CHS or HS) employees contracted by the DOC to provide medical care to inmates at SDSP and MDSP.

34. Yankton Medical Clinic®, P.C. is an Outside Medical facility contracted by the DOC to provide medical care to inmates at MDSP.

35. Dr. Brent Adams is Medical Doctor contracted by Yankton Medical Clinic and the DOC to provide medical care to inmates at MDSP.

36. CBM Correctional Food Services (CBM) is a private company contracted to feed inmates incarcerated in the DOC, this includes religious diets that conform to the tenents of inmates religious beliefs.

37. John Tweirwiller is the contracted CBM Correctional Food Services District Manager and is responsible for feeding inmates and providing commissary to inmates incarcerated in the S.D. DOC that allows inmates to conform to their sincerely held religious beliefs.

38. Unknown contracted CBM Employees who are responsible for insuring that the inmates incarcerated in the DOC are fed a diet that allows inmates to conform to the tenents of the inmates religious beliefs.

39. Delmar "Sunny" Walter is the contracted attorney retained by the DOC to provide legal assistance to all DOC inmates in South Dakota in lieu of an adequate law library. Walter is responsible for all acts and omissions by his paralegal, Mark Bidne (# 41, infra).

40. Cathrerine Schlimgen is an attorney contracted by the DOC.

41.   Mark Bidne is the contracted paralegal retained by the DOC to provide legal assistance to inmates at SD DOC facilities. Bidne is responsible to attorney Walter (#39, supra).

42.   Global Tel* Link (GTL) is a company contracted by the DOC to provide internet services to inmates within the DOC.

43.   At all times relevant to this complaint, defendants acted or failed to act under the color of state law. Defendants are hereby sued in their individual as well as official capacities, jointly and severally, for those acts and omissions described below.

## FACTUAL ALLEGATIONS

44.   Plaintiff James E. Shaw was incarcerated in the SDSP or the Jameson Prison Annex (JPA) located in Sioux Falls, SD from 2004 and was transferred to the MDSP in April of 2017.

45.   Shaw experienced numerous acts of retaliation before his transfer from SDSP to MDSP for litigating; attempting to litigate against; filing grievances against; attempting to file grievances; and attempting to get his religion recognized at SDSP by one or more named Defendants.

46.   Shaw complied with the transfer from SDSP to MDSP under duress because of threats of continued retaliation if he did not.

47.   Before Shaw's transfer, Plaintiff was deprived of most of his legal work, including charts, catalogs, notes, lists of elements to prove as well as other legal materials needed to write this complaint by one or more named Defendants. (See #45, above).

48.   Plaintiff has an eighth grade education, supplemented with a GED obtained while incarcerated.

49.   Shaw with his eighth grade education attempts to write the majority of this complaint from memory, unable to remember exact dates.

50.     The grievance process at JPA, SDSP and MDSP is governed by DOC Policy 1.3.E.2 "Administrative Remedy For Inmates," which provides for an Informational Resolutional Request Form (IR) that is submitted to unit staff who e-mail appropriate staff to issue a response (IRR). Subsequently, an inmate may submit a Request for Administrative Remedy Form (AR) to his unit staff designate who will forward the form to the Administrative Remedy Coordinator (ARC) who will assign a senior staff person to repair a response (ARR) after using e-mail to ask staff for their input, the ARR is then endorsed by the Warden or his deligate and forwarded to the inmate.

51.     Shaw has exhausted all availible administrative remedies on the following claims, except when Shaw was denied access to the grievance process due to one or more defendants retaliating against Plaintiff for engaging in a protected activity.

## CLAIM 1:

### SUBSTATIAL BURDENS PLACED ON SHAW'S ABILITY TO PRACTICE HIS RELIGION IN VIOLATION OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT OF 2000

52.     Plaintiff intends his Declaration of James Elmer Shaw #23338 (DJS) to be a part hereof to his complaint.

53.     The DJS is a system of religious belief that Shaw declares he must adhere to in order to reach his ultimate goal of attaining Godhood.

54.     Defendants Kaemingk, Dooley, Young, Drieske, Stanwick-Klemik and Mertens-Jones have violated Plaintiff's Constitutional Rights under the Religious Land Use And Institutionalized Persons Act (RLUIPA) by refusing to recognize his religion both verbally and in writing, due to Shaw's religion being a nonmainstream religion.

55.     Defendants at #54 above have denied, Shaw's requests for accomodations within his DJS that are mandated and central to Plaintiff's religious beliefs. His beliefs are both sincerely held and rooted in religious belief.

56.    Shaw's requests within his DJS are based on Plaintiff's sincerely held religious beliefs and not some other motivation. The Defendants denials have placed a substantial burden on Shaw.

57.    The name of Shaw's religion is Dorcha Cosán (DC) (DJS at #2) that follows a very strict code of ethics, The Nine Laws of Dorcha Cosán (NLDC). DJS at #3.

58.    Each of the NLDC has a compilation of aspects for those axioms that Shaw asserts he must follow with complete adherance for Shaw to keep his geise (DJS p.1, footnote 1) and for Shaw to reach his ultimate religious goal of attaining Godhood.

59.    Shaw believes through the DC and adhering to the NLDC is his quest to understanding Life in a greater way, to learn the primal order, and connect with the Source that is the impetus for walking his spiritual path.

60.    Shaw when able to adhere to the NLDC, in essence, can learn to perform true Magick® by finding his true divine Self within his being. Then and only then, will the elements, powers, and realms of nature be accessible to him and in harmony with the hole of DC.

61.    The denial of any aspect of the NLDS prevents Shaw from the benifit of awakening his eternal Self. Defendants at #54 above, are denying Plaintiff the wisdom, perspective, judgement, inspiration, and skills necessary to both keep his geise and accomplish his ultimate goal of attaining Godhood.

62.    Defendants Kaemingk, Dooley, Young, Drieske, Stanwick-Klemik and Merten-Jones have created Operation Memorandums, Policies, Procedures, Rules and Regulations, both written and unwritten, or have been accepted by

Footnote

① 1).The occult practice of causing change in the physical world by extraordinary means. 2).Engaging the assistance or cooperation of that necessary, be it physics, or spirit, to create a desired outcome. The use of charms or spells to achieve supernatural power over natural forces. 3). The term magick with a "K" was introduced by Aleister Crowley. It has been adopted by modern pagans to distinguish the practice of witchcraft from stage magic.

these high-level Defendant Officials that:

    a.   require Plaintiff provide proof that his religious requests that are mandated by his religion;

    b.   allow Shaw's religion to be taken away from him, as a punishment, for up to thirty (30) days for a minor rule infraction that has nothing to do with his religion;

    c.   force Shaw to waite four (4) months before religious requests by Plaintiff will be considered, and then not answer them;

    d.   force Shaw to waite an entire year to celebrate a single religious holiday when Plaintiff is mandated by his religion to celebrate Eight (8) Sabbats and Thirteen (13) Esbats throughout the year (DJS ## 3 at VII, VIII, and 391-649), denying Shaw the religious benifits associated with these celebrations;

    e.   force Shaw to allow at least two (2) sex offenders attend his religious worship time in violation of plaintiff's beliefs. (DJS at ## 127 and 128);

    f.   only allow Shaw one (1) day a week for group worship time when his group is mandated to meet three (3) times a week in addition to DC Holidays (DJS at # 354);

    g.   force Shaw to allow non-members of DC to attend his religious ceremonies/rituals prohibited by his religion. (DJS at ## 299-300).

    h.   only allow Shaw two religious books when Plaintiff is mandated to have access to thousands at any given time (DJS at ## 109-160);

    i.   allow the DOC to discriminate against Shaw's religion in that Plaintiff is denied religious requests that are approved for mainstream religions within the DOC;

    63.   Shaw stopped Wardens Dooley and Young; DW Drieske and Unit Manager Bieber at his cell front at SDSP, tried to explain his religious requests were all

mandated by his religion and that Plaintiff intended to sue in order to get his religious requests. because denying Shaw's religion is illegal.

64.    Defendant Drieske stated, "go ahead and sue us, I'll claim all your requests are a security threat."

65.    Defendants Dooley and Young being Drieske's supervisors, were deficient in managing Drieske in that Shaw claimed his religion was being denied and Dooley and Young failed to remedy the wrong, instead turning a blind eye.

66.    Upon arrival at MDSP Shaw approached DW Stanwick-Klemik and requested to talk to her about his religion and Stanwick-Klemik told Shaw, "Dorcha Cosan will not be approved as a recognized religion," and Shaw was told, "you should consider signing up for other religious services that are already established here at Mike Durfee." This would be an ethical violation of Shaw's obligations to Dorcha Cosan.

67.    Defendants Dooley, Young, Drieske, Stanwick-Klemik have denied the following religious requests mandated by Law I of DC submitted by Shaw or failed to answer religious requests submitted by Shaw for the following;

a.    Shaw has been denied the ability to take his mandated curriculum of study (DJS at #5) after he took a geise (DJS #3 and footnote #3) and is unable to ascend the ladder of Learning (LOL). DJS at #10-25.

b.    Shaw has been denied the ability to take three (3); Ancestry DNA tests to determine his origins mandated by Shaw's religion so that Shaw can study the Gods and Goddesses of his ancestors DJS at #48. Shaw is mandated to spend hours, days, months and years if necessary researching archives, with microfiche, searching government records online, looking at every possible avenue to find the earliest possible source of his ancestry such as retaining the books necessary for his research and conducting genealogical searches, Shaw must chart all finds on a genogram.

c.    Shaw has been denied the ability to study and learn the lore and genealogies he is sworn to preserve by researching the archives within the DC Library (DCL) and searching the internet. This denies Shaw the ability to learn

from the honor and behaviors from the past by means of stories, art, music & poems, recitations and reserching his ancestors heroic societies with heroes and heroins embedded in the cosmology of sacred places, deities, and supernatural powers;

d. Shaw has been denied the ability to keep his geise with the Goddesses Brid and Hera. DJS at # 7;

c. Shaw has been denied a Gleini na Droedh (GnD). DJS at ## 19-24 and 56;

d. Shaw has been denied a Geise ring. DJS at ## 56 and 197;

e. Shaw has been denied the ability, upon making his geise, to receive the ritual tools and the first eighty-five (85) texts and their companions of study. DJS at # 57 a-f. Shaw is mandated to have access to these religious texts at all times;

f. Shaw has been denied-DJS # 57 a,b,c,d and f without giving any reason for the denials and Shaw was told by Drieske he can not have any of the artistic texts or text companions because they "might have nudity," even though these are for religious, educational and artistic development. Drieske has eliminated sixty-five (65) of the first mandated text/text companions with no penological justification for doing so other than an exaggerated prison concern and a porn policy this Court has ruled to be unconstitutional in Sissney v. Kaemingk;

g. Shaw has been denied the ability to choose his specific order of accention, denied the opportunity to be reborn, denied his ability to seek guides and helpers, and denied Shaw the ability to choose his Branch of Destiny. DJS at ## 59-69.

h. Shaw has been denied the ability to acquire all other mandated texts and text companions (DJS at ## 67-69) due to # 62, h, above;

i. Shaw has been denied the ability to take on-line correspondence courses. DJS at ## 65, a-c, 66 and 104.

j. Shaw has been denied a classroom setting for Plaintiff and members of DC

to set up computer and art work stations for DC students to adhere to Law I. DJS at #161; Complete the Five Geata DJS at #70-83; take online correspondee courses (i above); do online research (67 a, b, c above); Build the Dorcha Cosán Library (DCL) DJS at ##111-150; Build an art studio to complete the three (3) Quests of Mastery. DJS at ##86-94; to complete the LOL. DJS at #95-109; and, complete the un-named rung on the LOL. DJS at #107;

k.    Shaw has been denied a Group Book of Shadows (GBOS). DJS at #151 and a personal Book of Shadows (BOS). DJS at #152 which are mandated by DC. DJS at ##151-162.

68.    All requests within Law I are of no cost to Defendants. Everything needed for Shaw to adhere to Law I will be purchased by DC through approved vendors.

69.    Defendants Drieske, Stanwick-Klemik, Mertens Jones, CBM, Unknown CBM Employees and Tweirweiller have denied Shaw the ability to adhere to the commandment of Law II of DC that mandates Plaintiff adhere to his religious diet. Shaw asserts he may not violate his religious diet requirements at peril of his soul. DJS at ##164-206.

70.    When Shaw complained to Tweirweiller and an unknown CBM employee, asking why other religions got special diets but members of DC are denied a religious diet, the unknown CBM Employee stated, "if you don't like it don't eat anymore."

71.    Everytime Shaw takes a bite of food served by defendants, Plaintiff believes he is defiling himself by doing something that is completely forbidden by his religion

72.    Defendants at #69 above, have left Shaw with the option of death by starvation if he wishes to keep his geise.

73.    There is not one (1) single item served by CBM that is compliance with Shaw's religious diet requirements.

74.    Defendants at #69 above, have denied Shaw the ability to celebrate his Holy

Days called Sabbats and Esbats with 'Ritual and Feast' as mandated by Law II of DC DJS at ## 181-206, Shaw asserts his Sabbats and Esbats are Holy Days and the activities mandated on these days easily qualify as 'religious exercise' under RLUIPA's definition.

75.    Drieske has denied all other mandated aspects of Law II requested by Shaw. DJS at ## 207-215.

76.    Unknown: CHS employees and Drieske have denied Shaw the ability to adhere to Law II of DC by denying Plaintiff all natural herbal remedies to replace the pharmaceuticals he is currently prescribed.

77.    Defendants Alcock, Lentsch, Bieber and Klemik have continued to force Shaw to live and dine with non believers of DC, other races, religions or peoples who live by a different creed. DJS at 214.

78.    Defendants at #77 above continue to do #77 above knowing that there is a high probability of confrontation between Shaw and his cell mates in violation of Shaw's right to be free from cruel and unusual punishment.

79.    Defendants at #77 above, allow other religious inmates, gang members and other races to live together if they request it, yet Shaw is denied.

80.    Drieske, and Stanwick-Klemik have denied Shaw the ability to adhere to Law III of DC. (DJS at ## 216-226). Drieske through Mertens-Jones told Shaw to switch to Buddha.

81.    Drieske, Stanwick-Klemik and Mertens-Jones have denied Shaw the ability to adhere to Law IV of DC by denying Plaintiff ritual and divination tools mandated by DC. DJS at ## 226-297.

82.    To deny Shaw his ritual and divination tools is the equivalent of taking a digit or limb from Shaw for each ritual tool denied.

83.    Ritual and divination tools are an extension of Shaw, they are partners and aids in Magick and can not be regulated as being props that can be easily

discarded or denied.

84.    Ritual and divination tools are "sacred" as all things to members of DC are, because they are a manifestation of the divine. Filled with divine light of the Gods and Goddesses, ritual and divination tools are essentially alive and apart of Shaw and DC.

85    Ritual and divination tools are among the outer aspects of Wicca by which Shaw defines his religion.

86.    Defendants Drieske and Stanwick-Klemik have denied Plaintiff the ability to adhere to Law V of Dorcha Cosán. DJS at ## 299-328.

87.    Defendants Drieske and Stanwick-Klemik have denied Shaw the ability to adhere to law VI of DC that mandates Plaintiff build an outside "Sacred Circle" (Nemeton) and a Vision Mound (VM), i.e. is an "Earth Based" religion. DJS at # 330-390.

88    Defendants Drieske and Stanwick-Klemik have denied Shaw the ability to adhere to Law VII of DC that mandates Plaintiff worship and celebrate the "Sun" throughout the "Wheel of the Year" (WOY) and DC's Zodiac system, by giving thanks, sending daily offerings and having "outdoor-cook-outs" followed by "outdoor-ritual and feast" ceremonies on the day before or the day of the Eight (8) Sabbats. DJS at ## 391-517.

89.    Defendants Drieske and Stanwick-Klemik have denied Shaw the ability to adhere to Law VIII of DC that mandates Plaintiff worship and celebrate the "Moon" throughout the "Tree Calendar," by giving thanks, sending daily offerings, and having "outdoor-cook-outs" followed by "outdoor-ritual and feast" ceremonies on the day before or day of the Thirteen (13) Esbats. DJS at ## 518-649.

90.    Defendants Drieske, and Stanwick-Klemik have denied Shaw the ability to adhere to all aspects of Law IX of DC. DJS at ## 650-674 and ## 675-739.

91.    Every request by Shaw to adhere to the NLDC within the DJS has been denied by one or more Defendants. These denials have prevented Shaw from reaching Godhood and have damned his soul.

CLAIM 2 :

FREE EXERCISE CLAUSE OF THE FIRST AND FOURTEENTH AMENDMENT

92.    The denials by one or more Defendants to recognize Shaw's religion of DC has placed a substantial burden on the observances of Plaintiff's central religious beliefs and practices, in addition, named Defendants have intentionally targeted Shaw's religion because it is a minority faith comparable to the opportunities afforded fellow prisoners who adhere to conventional religious precepts.

93.    Further, Defendants Kaemingk, Dooley, Young, Drieske, Stanwick, Mertens-Jones, Lentsch, and Bieber have no justification for deciding other religious groups or similarly situated inmates can receive the religious accommodations denied to Shaw.

94.    These denials have caused Shaw to significantly modify his religious beliefs, his behaviors, and caused Plaintiff to violate his geise.

95.    These denials by one or more named Defendants bears direct, primary, and fundamental responsibility for rendering Shaw's religious exercise effectively impractical.

96.    Defendants CBM, Unknown CBM Employees, Tweirweiller have discriminated against Shaw's Wiccan religion by not allowing Plaintiff his religious diet mandated by the Laws of DC when they allow other more mainstream religions diets in accordance with their religious precepts.

97.    Defendant CBM has discriminated against Shaw by denying Shaw the ability to receive care packs from friends and family because he is an indigent inmate. Shaw, Shaw's friends and family are being punished for Shaw being poor.

98.    Defendant GTL has discriminated agains Shaw by denying Shaw the ability to receive music, books and games on a tablet because he is an indigent inmate. Shaw, Shaws friends and family are being punished for Shaw being poor.

99.    Denying an indigent inmate ##97 and 98 above is the equivalent to lining up all the Black inmates on one side of a room and all the white inmates

on the other side of the room, then telling the black inmates they can not receive the privilege of receiving #97 and #98 above from friends and family because they are black.

100.    Defendants Nick Reddman and Judy Jacobs discriminated against Shaw for being a practitioner of a Wiccan Faith by denying Shaw the ability to use the law computer in the school at SDSP because preparing this complaint and typing his DJS was labeled a rule infraction.

101.    Defendant Jacobs stated, "My Christian Faith does not allow me to let Shaw's "Devil Worship Group" sue my employers." Shaw's Religion does not believe in the Devil nor Worship the Devil. This was a discrimitory action against Shaw.

102.    Reddman denied Shaw employment in the school due to Shaw being banned from all computers in the DOC to prevent Shaw from preparing this instant action.

103.    Shaw was never written up for a rule infraction but was sanctioned ## 101 -104.

104.    Defendant Fraiser continued the imposition of the above sanctions to prevent Shaw from preparing religious complaints and project applications when Fraiser, Jacobs and Reddman let Christian, Jewish and Native American groups prepare their complaints and or project applications on the computers in the Law library.

## CLAIM 3 :

### EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMEN

105.    Every aspect of the NUOC and requested accommodations by Shaw to adhere to Shaw's religion DC, has been approved for similarly situated inmates and more mainstream religious groups, yet denied to Shaw because he practices a tradition of Wicca that is a non mainstream religion.

106.    The fact every aspect of the NUOC are already approved for similarly situated inmates and more mainstream religious groups by Kaeminghk, Dooley, Young,

Drieske, Stanwick-Kemik and Mertens-Jones shows the denials and restrictions on Shaws religion are not necessary to serve a compelling governmental interest.

107. One or more named Defendants have treated Shaw differently than other similarly situated inmates, the different treatments burden Shaws fundamental rights, and the different treatments bear no rational relation to any penal interest.

108. Drieske, Stanwick-Klemik and CBM allow other religious groups to buy and receive donations from outside approved venders other than CBM for their religious or cultural gatherings that allow these groups to adhere to their dietiary precepts yet deny DC and Shaw these same religious freedoms.

109. DC and Shaw are required to only purchase foods for their religious gatherings and Holy celebrations through CBM who refuses to allow DC and Shaw to adhere to the strict dietary requirements of DC.

110. The celebratory meals provided to DC and Shaw by CBM are the same main-line meals served to general population for free, yet DC and Shaw are required to pay exaggerated, marked up prices for these same meals.

111. CBM also provides special meals for mainstream religions for free on their holidays yet denies DC and Shaw this same opportunity.

112. Defendants CBM, Tweirweiller, and unknown CBM Employees have falsely advertised that their commissary products are in compliance with Shaws religious requests and that they are a certain name-brand item and a certain quantity for an established price.

113. CBM Employees then replace the name-brand products with cheaper, generic, less quantity products, that do not comply with Shaws religious requests, increase the price for these cheaper products and they do not post these changes.

114. Shaw does not find out items and quantities have been changed until the order is delivered and then CBM Employees refuse to reimberse Shaw.

115 When CBM continually replace brand-name items with cheaper less-

quantity versions the need for the exorbitant price increases is highly questionable and extremely unnecessary when a rational person takes into account the realities of the cost for food products in the "Free" world have been decreasing for the past two years now

116. In October of 2016 CBM again raised their commissary prices on over 300 commissary items by an average of 18% on food items alone. At the same time replacing brand name items with cheaper immatation less quantity items.

117. Defendants Kaemingk, Dooley and unknown CBM Employees allow other religious groups to purchase foods, commissary and religious items from venders other than CBM yet deny this opportunity to Shaw and DC.

118. Defendants Kaemingk, Dooley, and unknown CBM Employees have created a monopoly and are "extorting" Shaw because he is a "captive" customer/consumer.

119 Shaw and DC are at the mercy of whatever the DOC allows CBM to charge his religious group for any and all commissary products because Plaintiff and his religious group are unable to shop anywhere else, in addition other religious groups are allowed too.

120. Not only are Shaw and DC subject to exaggerated, inflated commissary prices, CBM has the food service contract.

121. This allows CBM to feed Shaw and DC members "undesirable" foods inwhich forces Shaw and DC members to buy their commissary at CBM's exaggerated, way above MRSP's because of hunger.

122. To make matters worse CBM refuses to provide Shaw with his religious dietary needs and refuses to carry commissary products that allow Shaw to adhere to his religion.

123. By CBM having the Commissary and Food Services contracts, in addition to not allowing Shaw and DC to purchase items from other approved venders as more mainstream religions are able too, CBM has discriminated against DC and Shaw through creating a monopoly with the DOC in violation of the South Dakota

Constitution and the Federal Sherman Act.

124.    On December 21, 2016, Shaw and DC was forced to cancel their Yule Sabbat feast and celebration because of the DOC and CBM's joint monopoly. This placed a substantial burden on Shaw's religion.

125.    Shaw and DC cancelled the above Sabbat because CBM and Drieske refused to allow Plaintiff to order "all natural" foods from HyVee who is an approved vender for the DOC.

126.    HyVee is an approved vender and is willing to prepare "religious feasts" for DC and Shaw that are in accordance with DC strict "all natural" requirments mandated (emphasis added) in Law II of DC.

127.    The month before Shaw had to cancel his religious feast the buddhist group had a catered religious feast by HyVee and the months after, the Jewish and Muslim groups had catered meals by HyVee.

128.    These differential treatments were approved by CAC Drieske.

129.    One or more named Defendants own stocks or shares in CBM and Shaw believes this is the reason Kaemingk has allowed CBM to create the current monopoly to violate Shaws constitutional rights.

CLAIM 4:

FIRST AMENDMENT RIGHT TO RECEIVE MAIL

130.    Defendants Drieske, Baker, Miller-Hunhoff, Reimann, and Storvick have violated Shaw's First Amendment guarantee of freedom of speech that protects Plaintiff against censorship of a prisoners incoming correspondence without legitimate governmental interest in the order and security of penal institutions to justify the imposition of the restraints on Shaw's correspondence.

131.    Defendants above, rejected or refused to deliver over two-hundred (200) magazines mailed to Shaw based on an exaggerated response to prison concerns,

especially since these rejections have continued since the current DOC policy for inmate correspondence has been ruled unconstitutional in Sisney v. Kaemingk.

132. These rejected magazines are "art" magazines and are necessary reference materials for Shaw's religion. These materials are used to develop Plaintiff's artistic-magickal mind.

133. The rejection of these magazines places a substantial burden upon Shaw.

134. Most of these rejections are based on one (1) single, small picture within an entire magazine.

135. Once rejected Shaw is unable to send the rejected magazines out due to Plaintiff being indigent, causing Shaw over $1,000.00 in monetary loss.

136. Shaw's magazines have been rejected per DW Drieske and Maj. Baker and then rejected again by Drieske or Baker during the grievance process.

137. Shaw believes he has procedural due process rights that are being violated by Drieske and Baker both rejecting the magazines and then being the final discision makers in the grievance process.

138. Shaw has been denied the opportunity to order religiously mandated texts for his religion based upon the theory of DW Drieske that, "They might have nudity in them."

<u>CLAIM 5:</u>

<u>DUE PROCESS CLAUSE OF THE FIFTH & FOURTEENTH AMENDMENT</u>

139. Defendants Kaemingk, Dooley and Young have violated Plaintiff's constitutional rights by promulgating policies that allow Defendants to unlawfully deprive Plaintiff of personal property and monies deposited into Shaw's institutional account. These monies were received from outside sources taken without any procedural due-process.

140. There are currently no procedural safeguards sufficient to avoid erroneous

deprivisions of Shaw's protected life, liberty or property interest due to these policies.

141.    The current DOC policy dealing with incoming monies allows for up to 95% of Plaintiff's incoming monies.

142.    Plaintiff asserts he should be provided with a pre-deprivation hearing before the confiscation of his incoming monies.

143.    The current DOC policy requires Shaw sign away his due process rights to receive money or buy property or he is unable to purchace personal property or receive money from friends or family.

144.    The current policy allows for DOC officials to loose, take or destroy Shaw's personal property without any liability for doing such.

145.    When Shaw's property was returned on two (2) occasions, a significant portions of Plaintiff's property was missing. The current policies require Shaw, (1) sign the return inventory sheet and forfiet his missing property or (2) refuse to sign the return inventory sheet and loose all of Plaintiff's property.

146.    The current Administrative Remedy policy is unconstitutional in that it allowed UM Bieber to be the deciding factor in both stages of the grievance process insuring Plaintiff could not get his property back through the grievance process.

147.    The current DOC policy allowed defendants to confiscate $140.00 out of Shaw's inmate account without notifying Plaintiff or giving Shaw an opportunity to state his objections to the unconstitutional stealing of Plaintiff's money.

148.    The current DOC policy allows for one or more Defendants to take Shaw's incoming money, place the taken money in a Frozen Account and forever hold it without Shaw's permission, against Shaw's will, and without having power of attorney to do so.

149.    This policy also allows the DOC to earn interest off Shaw's and similary situated inmates, and does not allow Shaw to receive interest money made off Shaw's money.

150.    The DOC does not have power of attorney nor do they have Shaw's permission to hold Shaw's moneys or make money (interest) off the monies illegally taken from Shaw.

151.    In addition Shaw has not agreed or allowed the DOC to take monies from Shaw for Cost of Incarceration. When Shaw was sentenced to prison the judge ordered that Shaw's court costs and Shaw's incarceration would be a burden of Custer Co. and the State.

152.    Shaw believes Cost of Incarceration was intended for trustee inmates who make minimum wage or better. Not inmates that are indigent such as Shaw.

## CLAIM 6:

## TITLE II OF THE AMERICANS WITH DISABILITIES ACT (ADA)

153.    Plaintiff asserts he is a disabled person. Shaw has been diagnosed with an osteochondroma of the right proximal fibula, has no ACL's in his knees, needs full knee replacements which he can not receive until he is at least 60 years of age, wears metal knee braces, has low back pain due to his bottom three (3) vertebrae having no fluid in them and has arthritis in his knees and lower back.

154.    All of # 153 above, have caused Shaw pain and suffering when caring for himself, performing manual tasks such as walking, sitting or even standing too long causes Plaintiff excruciating pain.

155.    In addition to pain, Shaw's conditions at #153 above cause Plaintiff restless, sleepless nights and severe bouts of depression because he can not enjoy life without pain.

156.    Defendants Dooley, Young, Ponto, Lentsch, Klemik, Dr. Regier, PA Adams, RN Bowers, RN Screves and Unknown CHS Employees refused to provide Shaw with a medical order for a medical bunk (a handicap bed), refused to give Shaw a handicap accessible room when other handicap individuals received these accommodations.

151.    These denials are after continued begging from Shaw for a medical bunk due to his knees popping out of socket and causing Shaw more permanent injuries to his knees and lower back due to these denials.

158    Shaw has personally asked each individual defendant at #56 above for medical accommodations and has been denied.

159.    Shaw last asked Dooley for help with his medical issues, first while he was in the barracks, Dooley refused to help Shaw and instead turned a blind eye.

160.    When Shaw later asked Dooley for a medical bunk, Dooley threatened to place Shaw back in the barracks so Shaw could enjoy the heat.

161.    Both times Shaw talked with Dooley about his medical needs Plaintiff showed Dooley the large bruises on the inside of his knees and the first time Shaw was on crutches all because he was not allowed a medical bunk.

162.    Defendant Dr. Regier and PA Adams refuse to give Shaw a perscription for a medication that will relieve some of Shaw's pain.

163.    Shaw has refused to eat and drink water for up to thirteen days in an attempt to get a medical order for a handicap cell with a medical bunk order and has been to numerous sick calls to prove Defendants know Shaw's current living arrangement is causing more damage, pain and suffering to Shaw.

164.    The denials of a handicap cell, medications and treatments are punishment for Shaw engaging in a protected activity (filing grievances and a lawsuit challenging the conditions of his confinement) by Defendants Regier and PA Adams.

<u>CLAIM 7:</u>

<u>DENIAL OF MEDICAL CARE/DELIBERATE INDIFFERENCE AND CRUEL AND UNUSUAL PUNISHMENT</u>

165.    Defendants Kaeminck, Dooley, Young, Bieber, Lentsch, Klemik, Carpenter, Regier, PA. Adams, Schreurs, Bowers and Unknown CHS Employees have promulgated Operation Memorandoms, Policies, Procedures, Rules and Regulations, both written and unwritten, or have been accepted or used by one or more defendants to declare medical treatments are "comfort care" and not necessary to deny Shaw medical care.

166.    These policies allow Medical personel to leave medical decisions up to non-medical personel (DOC Unit Staff) to decide if Shaw can receive medical treatments that can relieve Shaws pain.

167.    The DOC Unit Staff then can claim Shaw must get medical orders from CHS placing Shaw in a perpetual loop that the DOC and CHS send Shaw back and forth claiming Shaw must get med orders from the other.

168.    This allows the DOC and CHS to deny Shaw medical treatments without having to except the blame for doing such.

169.    Defendants Dooley and Carpenter have created a procedure that they send to outside doctors a list of what they can and can not recommend for Shaw ensuring they do not have to provide Shaw with the medical care necessary for his injuries.

170.    This procedure insures Shaw can not receive surgeries he needs, medical shoes, and or pain medications to relieve Shaws chronic pain.

171    In June of 2017 Shaw saw Defendant Brent Adams at Yankton Medical Clinic. (YMC)

172.    Defendant Brent Adams told Shaw there are other treatments that could help Shaw's pain and suffering such as gel injections in his knees and medications that the DOC wont pay for and has instructed him (Adams) not to prescribe. Dr. Brent Adams told Shaw he is too poor to pay for them himself.

173.    Dr. Adams has an ethical obligation to prescribe medications and or recommend treatments that will alleviate Shaw's pain and suffering regardless of

the cost or DOH/CHS/DOC interference.

174.    Defendants Yankton Medical Center (YMC) and Dr. Brent Adams have conspired with Defendants Carpenter and Dooley to prevent Shaw from getting necessary medical care due to the amount of money it would cost to get surgeries or appropriate medications/treatments Shaw needs.

175.    Defendants Yankton Medical Center (YMC), Dr. Brent Adams, Dr. Carpenter and Dooley have conspired to be Deliberately Indifferent to Shaw's serious medical needs.

176.    Defendants at #175 above, cruel and unusual punishment has cause more damage to Shaws knees and lower back.

177.    In addition Unknown CHS Defendants take all of Shaw's medical orders away from Shaw as punishment when he is placed in the SHU.

178.    Plaintiff is unable to wear his medically necessary knee braces and medical shoes with his pescribed heel wedges. as well as his perscribed head of bed wedge that helps Shaw battle severe acid reflux.

179.    All of #178 above causes Shaw extreme pain and suffering and is torture for Shaw.

<u>CLAIM 8:</u>

<u>DENIAL OF ACCESS TO THE COURTS</u>

180.    Defendants Allcock, Ponto, Bieber, Lentsch, Klemick, Vitetta, Naturan and Ulmer denied Shaw access to the courts by preventing Shaw from grievancing the conditions of his confinement by (1) denying Plaintiff grievances, (2) refusing to take Plaintiffs grievances once aquired, (3) not answering grievances placed in Defendants boxes or placed under their doors, and (4) retaliating against Plaintiff for trying to grievance the conditions of his confinement by punishing Shaw.

181    Unit Manager Bieber involved himself in both stages of the Administrative Remedies process and lied to his superiors to prevent Shaw from challenging the

conditions of his confinement.

182    When Shaw told Porto of the acts of UM Bieber, Porto turned a blind eye and did nothing.

183.    When Shaw wrote to and told Warden Young of the acts of UM Bieber, he too turned a bling eye and did nothing.

184.    When Shaw grievanced conditions of his confinement Defendant Maturan denied Shaw's administrative remedies for exaggerated reasons to prevent Shaw from getting his claims to court.

185    UC Vitetta and UM Bieber prevented Shaw' from creating and mailing legal papers by withholding necessary resources and or materials.

186.    UC Vitetta denied Shaw the ability to send out legal mail, because of this denial Shaw was unable to argue key elements of his case because he was denied the ability to send a copy of Shaw's Response to Defendant Answer to attorney Schlimgfen and the judge would not allow Plaintiff to argue his due process claims.

187.    UC Vitetta aided in Shaw loosing a non frivolous legal claim.

188.    The lack of a law Library, Shaw being banned from the Law Library and attorney Delmar "Sonny" Walter and paralegal Mark Bidne's inadequacies hindered Shaw's efforts to proceed with a civil rights action claiming Plaintiff's constitutional due process rights were violated.

189.    A portion of a complaint Plaintiff prepared was dismissed for failure to meet a technical requirement that Shaw could not have known about because of the insufficient legal assistance provided by Shaw's prison facility.

190.    If Shaw was able to use the law library or if Bidne or Walter would have helped Shaw prepare his complaint he would have won his nonfrivolous claims.

191.    Bidne and Walter refused to help Shaw.

192.    Shaw told Major Baker that UC Vitetta was refusing to allow Plaintiff mail out legal mail and Baker turned a blind eye and did not remedy the situation.

193.    On 10/31/16 at 1:30 pm Plaintiff had a Small Claims hearing on I.T.V. During this hearing Defendant Schlimgen represented UM Bieber and Warden Yang.

194.    During this hearing Schlimgen gave perjured testimony on two (2) occasions to prevent Shaw from winning his claims.

195.    Schlimgen testified she knew a check No. 201009 was deposited in Plaintiff's institutional account and that it was not check No. 201295.

196.    This was untrue and prevented Shaw from getting monies illegally taken from Plaintiff returned to him.

<u>CLAIM 9:</u>

<u>RETALIATION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS</u>

197.    Because Shaw filed numerous grievances and a § 1983 action against Defendant Anderson, in October of 2016, Anderson caused Shaw's cell to be searched by unknown officers.

198.    Personal property and legal papers were taken from Plaintiff.

199.    Anderson took the table out of Shaw's cell to prevent Shaw from filing grievances and future litigations.

200.    This caused Shaw to be the only inmate in East Hall of SDSP to not have a table in his cell.

201.    UM Bieber has denied the return of Plaintiff's legal work and personal property and prevented Shaw from getting relief through the grievance process by involving himself in both stages of the available grievance process and intentially gave false information to his superiors in retaliation of Shaw filing grievances and

litigating against UM Bieber.

202    On one occasion Shaw confronted Bieber about #201 above, and Bieber stated "Prove it."

203.    On September 8, 2016, UM Bieber at Plaintiff's cell front told Shaw since he likes to file grievances he was being denied access to the law library.

204.    Bieber told Shaw his officers could write him up for everything and his punishment would be no library, no computers, no legal work and no religious services.

205.    Bieber stated, "We can both go out of our way to cause problems."

206.    In April of 2016, UM Bieber in retaliation for Shaw filing grievances and a law suit against him, threw 31 project applications in the trash that Shaw had filled out trying to get religious accommodations approved so that Plaintiff could adhere to the religious commandments of his faith.

207.    Shaw was forced to waite an additional three months to turn in his project applications. This put a significant burden on Shaws religion.

208.    UM Bieber denied Plaintiff medical orders and treatments due to Shaws filing of grievances and litigating against Bieber causing Shaw pain and suffering.

209.    UM Bieber intercepted grievances and threatened more retaliation if Shaw continued to file grievances on him.

210.    Bieber placed mentally ill inmates and inmates of rival gang members in a cell with Shaw to cause physical and mental harm to Shaw.

211.    UM Lentsch took Shaw's handicap cell status away and placed Plaintiff in a three-man cell to punish Shaw for refusing a transfer and filing grievances.

212.    Lentsch's placement of Plaintiff in a non-handicap cell caused Shaw extreme pain and suffering. Shaw could not sit up in his bed, getting in and out of

a three-man bunk bed was an impossible task for a person with extreme low back pain and a person with no ACL's and extreme degenerative disease in his knees and low back.

213.    Shaw also suffers from extreme acid reflux and was unable to use his head of bed wedge. This device is placed under his mattress to elevate his upper body to prevent Plaintiff throwing up acid vomit in his sleep.

214.    Shaw's head would be pressed up against the middle bunk if he tried to use this device in a three man cell.

215.    Shaw awoke on several occasions due to his burping up acid which fills up his mouth and sinus cavity.

216.    Lentsch also denied Shaw medical ice and a pillow to treat his swollen bruised knees.

217.    Lentsch knowing Shaw can not live with other races or gang members due to his religion and knowing Plaintiff could be assaulted, forced Shaw to live with a black inmate.

218.    Lentsch even encouraged an assault to take place by telling Shaw and the black inmate "do what you gotta do" when Shaw and the black inmate told Lentsch there was going to be a fight if forced to live together.

219.    In addition, Lentsch took personal property and legal work from Shaw, all because Plaintiff attempted to file grievances and refused to transfer from SDSP to MDSP.

220.    Lentsch threatened additional retaliation if Shaw continued to file grievances and law suits stating, "I can take more of your legal work or your TV can jump off the locker box and break."

221.    While in the SHU for refusing a transfer, UM Madson at Shaw's cell front stated, "I've been waiting a long time to punish you." Madson then used his power and position to impose the following excessive sanction upon Shaw:

a. 10 days in the SHU;
b. 6 months loss of recreation;
c. 6 months loss of visits;
d. 6 months loss of phones;
e. 6 months loss of commissary;
f. 6 months loss of care packs;

222.    Madson stated, "bet you won't sue me again" after he imposed his sanction

223.    Shaw informed Madson retaliation is illegal to which Madson stated, "so sue me" and then he laughed.

224.    In September of 2016, Defendant Jacobs, because she is a "Christian," she could not ethically allow Shaw to sue her employers over Plaintiff's "Wiccan" religion (See #101, above).

225    Therefor, Jacobs and Peddman had Plaintiff removed and banned from the law library and law computers for engaging in a protected liberty.

226.    Plaintiff was not written up for any rule infraction, he was punished for preparing his complaint.

227.    On October 11, 2016 at 8:00 am an inmate asked Jacobs, "why was Shaw banned from the Law library," an Jacobs responded, "someone saved on the computer, I don't know who so Shaw's the fall guy since he is a "Witch." I don't want him over here anymore."

228.    In May of 2016 Defendant Perret continued retalitory actions against Shaw for filing grievances and litigating against him.

229.    After UM Bieber placed a mentally ill inmate in the cell Shaw resided in, the mentally-ill inmate told Perret Shaw had refused to let him in the cell.

230.    Without an investigation or asking Shaw if the allegations were true, Perret had Plaintiff placed in the SHU for a major rule violation.

231. Later the same day the inmate who made the allegation was placed in "special needs" because he was hallucinating.

232. Perrit used #232 above, as an opportunity to send Shaw to the SHU so he could rifle through Plaintiff's property for three days. Normal pack-ups take less than an hour.

233. During this three day pack-up, Perret took legal documents from Shaw

234. Shaw never had a DHO hearing and never plead guilty, yet was convicted of the major rule violation.

235. When Shaw approached UM Bieber about Perret, UM Breber laughed and said, "prove it."

236. Shaw asserts that many if not all Shaw's claims above are due to Shaw engaging in the grievance process and for litigating against one or more named defendants.

## CLAIM 10:

## ILLEGAL PROMULGATION OF DOC RULES, POLICIES AND OPERATIONS MEMORANDOMS

237. Defendants Kaemingk, Dooley, Young, Drieske, Stanwick-Klemik, Mertens-Jones, Carpenter, Unknown CHS Employees, CBM and GTL have promulgated both written and unwritten, rules, regulations, policies and operations memorandoms that violate Shaw's Federally protected Constitutional rights.

238. Defendants are operating under policy that has been adopted in violation of of Article XIV, section 1 & 2 of the South Dakota State Constitution, and;

239. In accordance with SDCL 1-26-4.1, Notice of hearing on proposed rule — Contents — Publication — Mailing;

The notice of a hearing of an agency's intent to adopt, amend, or repeal a rule shall be published in a manner selected to notify persons likely to be affected by

the proposed rule.

At a minimum the notice of the public hearing shall be published in at least three (3) newspapers of general circulation in different parts of the state. The provisions of chapter 17-2 do not apply to notices required by this section.

The notice of a public hearing or the notice of intent to adopt an emergency rule shall be mailed to each person who has made a timely request of the agency for advance notice of its rule-making proceedings.

A notice of hearing or a notice of intent to adopt emergency rules shall contain a narrative description of a proposed rule and the reason for adopting the proposed rule. A notice of hearing shall also state where and when the hearing will be held, how amendments, data, opinions, and arguments may be presented, and how the public may obtain copies of the proposed rule.

240.  The Defendants have failed in following SDCL 1-26-4.1.

241.  SDCL 1-26-4.2 Fiscal note submitted with proposed rule — Fiscal note of bureau — Transmitting copies;

An agency shall, when submitting any proposed rule, except an emergency rule, include a fiscal note. The fiscal note shall state what effect, if any, the proposed rule will have on revenue, expenditures, or fiscal liabilities of the state or its agencies and subdivisions. The fiscal note shall include an explanation of how such effect, if any, is computed.

The Bureau of Finance and Management shall prepare its own fiscal note and serve it on the Joint Appropriations Committee prior to the hearing.

242.  The Defendants have failed in following SDCL 1-26-4.2.

243.  In SDCL 1-26-6.8 Rules unenforceable until properly adopted;

No agency rule may be enforced by the courts of this state until it has been adopted in conformance with the procedures set forth in this chapter.

The Administrative Procedure Act must be carried out to its fullest extent and cannot be fragmented; selective or arbitrary, utilization of only a portion of its features, chosen on a indiscriminate basis by an agency, is unacceptable. SDCL 1-26-1 to 1-26-40.

244.   SDCL 1-15-20 Rules, policies, and procedures for management of institutions and agencies —— Inmate Discipline;

States: The Department of Corrections at anytime may promulgate rules, pursuant to chapter 1-26.

245   The Defendants have violated this South Dakota State Law as well.

246   In addition, according to SDCL 1-15-1.8 Rules, regulations, and standards in full force and effect — Exceptions;

Unless inconsistant with other provisions of this chapter, all rules, regulations, and standards of the agencies in § 1-15-1.4 that are in effect on July 1, 1989, shall continue with full force and effect until they are specifically altered, amended, or revoked in the manner provided by law, unless the statutory authority for such rules is superseded by this chapter.

247.   Plaintiff presents to this court a question of law, in that, assuming the legislative language of this state, has the DOC followed an allowable course when adopting DOC Rules, Regulations, and Policies when infact they violate Shaws constitutional rights.

COUNT ONE: RLUIPA

(Against Defendants Kaemingk, Dooley, Young, Drieske, Stanwick-Klemik, Allcock, Lentsch, Bieber, Klemik, Mertens-Jones, Unknown CHS Employees, CBM, Tweirweiller and Unknown CBM Employees).

248.   Plaintiff alleges the preceeding paragraphs as fully set forth herein.

249.   At all times, Defendants were acting under color of state law.

250.   Defendants actions and policies have inhibited and constrained conduct or expressions that manifest central tenets of Plaintiff's ability to express adherence to his faith and have denied Plaintiff reasonable opportunities to engage in those activities

that are fundamental to Shaw's religion.

251  Defendants have and are causing Shaw to violate his geise and are preventing Shaw from reaching his ultimate goal of attaining Godhood.

252.  Defendants have denied Shaw his constitutional right to practice his religion in violation of RLUIPA, and the First Amendment Clauses of the Constitution of the United States, and receive Financial Monies from the government.

253.  As a direct result of Defendants' actions, Plaintiff was injured in an amount to be proven during trial.

254.  All defendants are sued in their individual and official capacities, jointly and severally.

COUNT TWO: FREE EXERCISE CLAUSE

(Against Dooley, Young, Drieske, Stanwick-Klemik, Jacobs, Frasier, Reddman, CBM, Tweirweiller, Unknown CBM Employees, and GTL).

255.  Plaintiff alleges the preceeding paragraphs as if fully set forth herein.

256  At all times relevant, Defendants were acting under color of state law.

257.  Defendants have placed substantial burdens on the observations of Plaintiffs' central religious beliefs and practices and or have discriminated against Shaw.

258.  Defendants have intentionally targeted Shaw's religion because it is a minority faith, denying Plaintiff reasonable opportunities of pursuing his faith comparable to the opportunities afforded fellow prisoners who adhere to conventional religious precepts.

259.  Further, Defendants have no justification for deciding other religious groups or similarly situated inmates can have many, if not all, of the religious items and accommodations requested by Shaw, such as but not limited to "... under the free Exercise Clause ... a prisoner has a clearly established ... right to a diet consistent with his ... religious scruples, including proper food." Further, "[a] prison official violates this clearly

established right if he intentionally and without sufficient justification denies an inmate his religiously mandated diet, violating Shaws First Amendment rights.

240. As a direct result of Defendants actions, Plaintiff was injured in an amount to be proven at trial.

241. All defendants have been sued in their individual and official capacities, jointly and severally.

COUNT THREE: EQUAL PROTECTION CLAUSE

(Against Kaemingk, Dooley, Young, Drieske, Stanwick-Klemik, Mertens-Jones, CBM, Tweirweiller and Unknown CBM Employees).

242. Plaintiff alleges the preceeding paragraphs as fully set forth herein.

243. At all times relevant, Defendants were acting under color of state law.

244. The fact Defendants have approved accommodations for more mainstream religions and have denied them to Plaintiff proves the restrictions placed on Shaw are not necessary to serve a compelling governmental interest.

245. Every mandated aspect of the NLOC are already approved for similarly situated inmates yet has been denied to Shaw because he practices a tradition of Wicca that is a nonmainstream religion.

246. Defendants are preventing Shaw from attaining his ultimate religious goal of reaching Godhood.

247. As a direct result of Defendant's actions and for violating Shaws First Amendment Rights, Plaintiff was injured in an amount to be proven at trial.

248. All defendants are sued in their individual and official capacities, jointly and severally.

COUNT FOUR: RIGHT TO RECIEVE MAIL

(Against Onieske, Baker, Miller Hunhoff, Reimann and Storvick).

268. Plaintiff alleges the proceeding paragraphs as if fully set forth herein.

270. At all times relevant, Defendants were acting under color of state law.

271. Plaintiff has a constitutional right to receive mail while incarcerated, especially mail Shaw uses to adhere to his religious piecepts.

272. No valid penological reason exist for Defendants to have denied Plaintiff his constitutional right to receive mail.

273. Once mail has been rejected Defendants refuse to allow Plaintiff to send the rejected mail out and do not notice Shaw and the Senders of the rejections.

275. By withholding Shaw's mail, Defendants' violated Plaintiffs' constitutional rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

276. As a direct result of Defendants' actions, Plaintiff was injured in an amount to be proven at trial.

277. All defendants are sued in their individual and official capacities, jointly and severally.

COUNT FIVE: DUE PROCESS CLAUSE

(Against Kaemingk, Dooley and Young).

278. Plaintiff alleges the preceeding paragraphs as if fully set forth herein.

279. At all times relevant, Defendants were acting under color of state law.

280. Defendants have violated Shaw's Constitutional Fifth and Fourteenth Amend.

rights by promulgating policies that allow Defendants to unlawfully deprive Plaintiff of personal property and monies.

281    These policies allow Defendants to act intentionally and abusively by taking taking Plaintiffs personal property and monies without any procedural due-process proceedings.

282.    There are currently no procedural safeguards sufficient to avoid erroneous deprivations of Plaintiffs protected life, liberty or property interests.

283    As a direct result of Defendants' actions, Plaintiff was injured in an amount to be proven at trial.

284    All defendants are sued in their individual and official capacities, jointly and severally.

COUNT SIX: ADA

(Against Dooley, Young, Ponto, Lentsch, Bieber, Klemik, Regier, Adams, Schreurs, and Bowers).

285    Plaintiff alleges the preceeding paragraphs as if set forth herein.

286.    At all times relevant, Defendants were acting under color of state law.

287.    Plaintiff is a qualified individual with disabilities and Defendants have violated Shaw's rights under the ADA by denying him a handicap cell, denying him medications and treatments in punishment for Shaw engaging in a protective activity (filing grievances and suit challenging the conditions of his environment).

288    As a direct result of Defendants' actions, Plaintiff was injured in an amount to be proven at trial.

289.    All defendants are sued in their individual and official capacities, jointly and severally.

COUNT SEVEN : DENIAL OF MEDICAL CARE

(Against Kaemingk, Dooley, Young, Lentsch, Brieber, Klemik, Carpenter, Regier, Adams, Schreurs, Bowers, Yankton Medical Center and Dr. Adams).

290.    Plaintiff alleges the preceeding paragraphs as fully set forth herein.

291.    At all relevant times, Defendants were acting under color of state law.

292.    Plaintiff had a "sufficiently serious" medical need for treatment for both his knees and lower back.

293.    Defendants "knew of" Plaintiffs serious need for medical care.

294.    Defendants have prevented Plaintiff from obtaining medical care needed causing Shaw irreparable harm.

295.    Defendants have decided to torture Shaw rather than give him a handicap cell.

296.    Defendants have caused Shaw continued pain, suffering, loss of sleep, mental anguish, and permanent injuries, by the continued denials of necessary and humane medical care in a timely matter.

297.    Defendants have and continue to deny Shaw his right to be free from cruel and unusual punishment and to equal protection of the laws as guaranteed by the Eighth and Fourteenth Amendments of the US Constitution.

298.    As a direct result of Defendants actions, Plaintiff was injured in an amount to be proven during trial.

299.    All defendants are sued in their individual and official capacities, jointly and severally.

COUNT EIGHT : DENIAL OF ACCESS TO THE COURTS

(Against Young, Ponto, Allcock, Lentsch, Bieber, Klemik, Vitetta, Ulmer, Mattran, Baker, Walter, Schlimgen and Bidne).

300. Plaintiff alleges the preceeding paragraphs as fully set forth herein.

301. At all relevant times, Defendants were acting under color of state law.

302. Defendants have denied Shaw access to the grievance process.

303. Defendants have prevented Plaintiff from creating and mailing legal papers by withholding necessary resources or materials.

304. Defendants have frustrated Shaw's ability to do research or get legal assistance, and prepare legal documents.

305. A portion of a complaint Plaintiff prepared was dismissed for failure to meet a technical requirement that Plaintiff could not have known about because of the insufficient legal assistance provided at SDSP.

306. Plaintiff being banned from the law library and law computers for attempting to litigate against one or more defendants, in addition to the lack of ADA materials and attorney's inadequacies or perjured testimonies have hindered Plaintiff's efforts to proceed with a civil rights action claiming his constitutional due process rights were violated.

307. Defendants did deny Plaintiff his rights under the First, Sixth and Fourteenth Amendments of the US Constitution.

308. As a direct result of Defendants' actions, Plaintiff was injured in an amount to be proven during trial.

309. All defendants are sued in their individual and official capacities, jointly and severally.

COUNT NINE: RETALIATION

(Against Lentsch, Bieber, Madson, Jacobs, Anderson and Perrett).

310. Plaintiff alleges the preceeding paragraphs as if fully set forth herein.

311 At all relevant times, Defendants were acting under color of state law.

312. Plaintiff engaged in a protected activity, namely initiating this lawsuit.

313. Defendants took adverse actions against Shaw which would chill a person of ordinary firmness from continuing the activity, including but not limited to taking Shaw's legal work and preventing Shaw from filing legal pleadings.

314. Defendants adverse actions were motivated, at least in part, by the exercise of Plaintiff's protected activity.

315 Defendants did deny Shaw his right to access to the courts without retribution therefor, due process of the law, and equal protection of the laws guaranteed by the First, Fourth, and Fourteenth Amendments to the US Constitution.

316. As a direct result of Defendants' actions, Plaintiff has been damaged in an amount to be proven during trial.

317. All defendants are sued in their individual and official capacities, jointly and severally.

COUNT TEN: ILLEGAL PROMULGATION OF RULES.

(Against Kaemingk, Dooley, Young, Drieske, Stanwick-Kleinik, Mertens-Jones, Carpenter, Unknown CHS Employees, CBM and GTL).

318. Plaintiff alleges the preceeding paragraphs as fully set forth herein.

319 At all relevant times, Defendants were acting under color of state laws.

320. Defendants have promulgated rules and regulations that violate Shaw's protected constitutional rights. in violation of the South Dakota Constitution and South Dakota State

laws.

321   Plaintiff is presenting a question of law to this Court in that, assuming the South Dakota Constitution and legislative language, has Defendants followed an allowable course when adopting DOC Rules, Regulations and Operations Memorandums and do they in fact violate Shaws constitutional and religious rights.

323   As a direct result of Defendants' actions, Plaintiff has been damaged in an amount to be proven during trial.

324.   Defendants are sued in their individual and official capacities, jointly and severally.

RELIEF REQUESTED

WHEREFORE, Plaintiff Shaw respectfully requests this Court grant to him the following relief:

A.   Issue declaratory judgements proclaiming:

1.   Defendants Kaemingk, Dooley, Young, Drieske, Stanwick-Klemik CBM Employees & Mertens-Jones have violated Plaintiff's Constitutional Rights under RLUIPA by refusing to recognize his religion due to Shaw's religion being a nonmainstream religion.

2.   Defendants have denied Shaw's requests for accommodations within the DJS that are mandated and central to Plaintiffs religious beliefs, beliefs that are both sincerely held and rooted in religious belief.

3.   Defendants have placed a substantial burden upon Shaw and are causing Shaw to violate his geise which will prevent Shaw from reaching Godhood.

4.   Defendants Kaemingk, Dooley, Young, Drieske, Stanwick-Klemic and Mertens-Jones have created Operations Memorandums, Policies, Proceedures, Rules and Regulations, both written and unwritten, or have been accepted by these high-level officials that have been illegally promulgated that violate Shaws Constitutional Rights.

5.    Defendants Drieske, Stanwick-Klemik, Mertens-Jones, CBM, Unknown CBM Employees and Tweirweiller have denied Shaw every single mandated aspect of the Nine Laws of Dorcha Cosán (NLDC) including but not limited to, an "outdoor" place of worship, a diet consistent with his religious commandments, classroom space with internet access, ritual items and or tools, the ability to celebrate Plaintiff's religious "Holy Days" known as Sabbats and Esbats, all of which places a substantial burden on Shaws religion.

6.    Defendants have no justification for deciding other religious groups or similarly situated inmates can have the religious accommodations denied to Shaw.

7.    Defendants CBM and GTL have discriminated against Shaw because he is poor.

8.    Defendants Jacob, Reddman and Fraiser discriminated agains and punished Shaw for being a Wiccan.

9.    Defendants denying Shaws requests for accommodations after they have been approved for other mainstream religions shows the denials and restrictions on Shaws religion are not necessary to serve a compelling governmental interest.

10.    One or more Defendants have conspired to and created a monopoly for CBM and allowed CBM to extort because Shaw is a captive customer/consumer.

11.    Defendants have violated Shaw's rights to freedom of speech and to be free from censorship of his incoming correspondence without legitimate governmental interest in the order and security of penal institutions to justify the imposition of the restraints on Shaws correspondence (Drieske, Baker, Miller-Hunhoff, Reimann, and Storvick).

12.    There are currently no procedural safeguards sufficient to avoid erroneous deprivisions of Shaws protected life, liberty or property interest due to the policies imposed by Kaemingk, Dooley and Young.

13.    Defendants can not hold Plaintiffs money against his will, can not cash a check or money order sent to Shaw or make money/interest off Shaws monies with out a power of attorney or Shaws signed authorization

14.   Plaintiff is a dissabled individual and Defendants Dooley, Yang, Ponto, Lentsch, Klemik, Dr. Regier, PA Adams, Schreurs, Bowers and Unknown CHS Employees have violated Shaws constitutional rights under the ADA by denying Shaw a handicap cell.

15.   Defendants Unknown CHS Employees refuse to give Shaw pain medication that will relieve pain and suffering.

16.   Defendants Dr. Regier, P.A. Adams, Schreurs, Bowers and Unknown CHS Employees can not leave it up to DOC employees, who are untrained medical personal, whether or not Shaw receives medical accommodations or not.

17.   Defendants Yankton Medical Clinic and Dr. Brent Adams have an "Ethical" obligation to provide Shaw with the medical treatments necessary for Shaw's medical needs regardless of one or more other Defendants interference or must recommend availible treatments.

18.   Defendants Yankton Medical Center and Dr. Brent Adams cannot refuse or not recommend medically necessary treatments to Shaw based on financial considerations or deny treatments to Shaw because he is poor.

19.   It is cruel and unusual punishment for Unknown CHS employees to take Shaws medical orders away from him as a punishment when Shaw is placed in the SHU.

20.   Defendants Allcock, Ponto, Bieber, Lentsch, Klemik, Vitella, Maturan, and Ulmer have denied Shaw access to the courts by preventing Shaw from filing grievances challenging the conditions of his confinement by (1) denying Plaintiff grievances, (2) refusing to take grievances from Plaintiff once acquired, (3) not answering grievances placed in their boxes or placed under their doors, and (4) retaliating against Plaintiff for trying to grievance the conditions of his confinement.

21.   Defendant Bieber involving himself in both stages of the grievance process to prevent Shaw from getting illegally confiscated personal property returned is illegal.

22.     Defendant Maturan denied Plaintiffs Grievances for exaggerated reasons to prevent Shaw from taking his claims to court.

23.     Defendant Vitetta and Bieber prevented Shaw from creating and mailing legal papers by withholding necessary resources and or materials and Vitetta's prevention caused Shaw to loose a non frivolous legal claim.

24.     Because of Defendants Walter and Bidne's refusal to help Shaw research and file an initial complaint, a portion of Shaws complaint was dismissed for failure to meet a technical requirement that Shaw could not have none about because of the insufficient legal assistance provided by Shaw's prison facility.

25.     Defendant Schlimgen giving perjured testimony in small claims court to defeat Shaws claims was both unethical and a violation of Shaws Constitutional right to access to the Courts.

26.     Defendants Bieber, Anderson, Perret, Lentsch, Madson, Jacobs, Redman, and Fraiser did directly or caused others unknown to retaliate against Plaintiff for practicing his constitutionally protected rights, preparing these valid legal claims, or filing Shaws previous valid legal claims.

27.     Defendants Kaemingk, Dooley, Young, Drieske, Stanwick-Klemik, Mertens-Jones, Carpenter, Unknown CHS Employees, CBM and GTL have promulgated both written and unwritten, rules, regulations, policies and operation memorandoms that violate Shaw's Federally protected Constitutional rights that have been adopted in violation of Article XIV, section 1 & 2 of the South Dakota State Constitution and South Dakota State Laws.

B.     Issue injunctions ordering:

1.     Declare every DOC Policy and Operations Memorandom void and reinstate the Administrative Rules of South Dakota (ARSD's), effective July 1, 1989, as required by SDCL 1-15-1.8 and SDCL 1-26-6.8.

2.     Require the DOC to reimburse all fines and costs of incarceration fees

that were confiscated from inmates illegally without due process of the law.

3.    Wipe all inmates disciplinary records clean of violations inmates have been convicted of for breaking rules and regulations that were derived from illegally promulgated rules and regulations.

4.    Force the DOC to promulgate new rules and regulations that coincide with the decisions in this case and are in accordance to the South Dakota State Constitution and South Dakota State Laws, that (1) do not violate Plaintiffs constitutional rights, and (2) riligious rights.

5.    Allow Shaw to practice every aspect of the NLDC within the DJS so that Shaw may keep his geise and reach his ultimate goal of ottaining Godhood.

6.    Prevent CBM (or any other food services/commissary provider) from aquiring both the food and commissary contracts with the DOC therefor preventing a monopoly.

7.    Allow DC to purchase "foods" from approved venders other than CBM that allows Plaintiff to adhere tis religious precepts.

8.    Stop GTL and CBM's diciminitive actions against Shaw for being poor and or Wiccan and allow Plaintiff the same opportunities as similarly situated inmates.

9.    Treat Shaw's nonmainstream religion equal to mainstream religions and allow Shaw ocommodations allowed to other religious groups.

10.    Create a Policy that allows Shaw to receive art books and magazines necessary for Plaintiff to develop his artistic-magickal mind and prevents Defendants from rejecting art as sexually explicit material or obscene when the publications are intended as a whole to be literary, scientific, artistic, political or religious in nature and value.

11.    Allow indigent inmates the ability to send out rejected mail.

12.    Allow Shaw his constitutional right to pre-deprivation hearings before incoming monies, monies in Plaintiff's inmate accounts and or personal property is taken from Shaw by creating procedural safeguards sufficient to avoid erroneous deprivisions of Plaintiff's protected life, liberty, or property interests.

13.    Prevent Defendants from being in more than one stage of the DOC grievance process.

14.    Prevent Defendants from charging cost of incarceration fees to Shaw who is not on work release.

15.    Because Plaintiff is a handicap, provide Shaw with a Handicap accessible bed and room in West Crawford, an accommodation provided to other inmates in Shaws unit.

16.    Provide Shaw with pain medication to battle his cronic knee and back pain in an all-natural herbal remedy form.

17.    Provide Shaw an appointment with outside medical personel without interference from Defendants and give to Shaw the recommended treatments and surgeries from the outside providers.

18.    Defendents stop denying Plaintiff access to the Courts, stop discriminating and retaliating against Shaw for trying to challenge the conditions of his confinement and preserveing his rights to litigate his claims.

C.    Award Plaintiff Shaw:

1.    Recompense Plaintiff for all monies illegally taken from Shaw and interests made off Shaws monies and for all property taken from Shaw.

2.    Conpensate Plaintiff for his pain and suffering and permanent injuries in the amount of $100.00 per day since July of 2015.

3.    Compensate Plaintiff damages against defendants CBM, Twierweiller, and Unknown CBM Defendants in the amount of $100.00 for each time Defendants

fed Shaw food that was not in accordance with the religious commandments of DC.

4.     Award Shaw Punitive damages against defendants CBM, Tweirweiller, and unknown CBM Employees in the amount of $200.00 for each time Defendants fed Shaw food that was not in accordance with the religious commandments of DC.

5.     Award Shaw punitive damages against CBM and GTL in the amount of $50,000.00 each and or CarePacks, Music Services, Games and EBooks for the remander of Shaws sentence for discriminating against Shaw for being poor.

6.     Award Shaw punitive damages in the amount of $250,000.00 against each defendant named for their individual reckless indifference and egregious conduct, to punish each Defendant and deter repitition.

D.     -     Issue an order requiring Defendants provide Shaw the acomodations necessary for Shaw to adhere to the NCDC and pay the Court all costs and fees due in this matter.

E.     Grant such other relief as the Court deems just.


                    IN CONCLUSION

     Because Plaintiff Shaw continues to suffer and be denied his religion as described above, because Defendants conduct was motivated by evil motive or intent, or involved malicious or reckless indifference to Plaintiffs constitutional rights, including his rights to practice his sincerely held religious beliefs, his right to Free Exercise and Equal Protection, his right to receive mail, his right to Due Process, his rights as a person with disabilities, his right to be free from cruel and unusual punishment, his right to access the courts, his right to engage in protective activity and to be free from rules and regulations or Policies elligally promulgated that violate Shaws constitutional rights, Shaw respectfully requests this Court issue the orders requested above.

VERIFICATION

I, James Shaw, Plaintiff proceeding pro se in this action, hereby verify under penalty of perjury that the facts stated above are true and correct.

Executed on this 24th Day of August, 2017.

James B. Shaw #23338
JAMES E. SHAW
Plaintiff pro se
Mike Durfee State Prison
1412 Wood Street
Springfield, SD
57062-2238

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th Day of August, 2017, the true original copy of the foregoing Complaint in the above entitled matter along with the Declaration of James E. Shaw (DJS), was placed in the prison Unit Coordinators office to be mailed to the:

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
OFFICE OF THE CLERK
ROOM 128
FEDERAL BLDG, & U.S. COURTHOUSE
SIOUX FALLS, SD  57104-6851