UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES ELMER SHAW, <br><br> Plaintiff, <br><br> vs. <br><br> DENNIS KAEMINGK, SECRETARY OF CORRECTIONS; INDIVIDUAL AND OFFICIAL CAPACITY; ROBERT DOOLEY, DIRECTOR OF PRISON OPERATIONS; INDIVIDUAL AND OFFICIAL CAPACITY; DARIN YOUNG, WARDEN; INDIVIDUAL AND OFFICIAL CAPACITY; JENNIFER DRIESKE, DEPUTY WARDEN; INDIVIDUAL AND OFFICIAL CAPACITY; JENNIFER STANWICK-KLEMIK, DEPUTY WARDEN; INDIVIDUAL AND OFFICIAL CAPACITY; TROY PONTO, ASSOCIATE WARDEN; INDIVIDUAL AND OFFICIAL CAPACITY; ARTHOR ALCOCK, ASSOCIATE WARDEN; INDIVIDUAL AND OFFICIAL CAPACITY; DAVID LENTSCH, UNIT MANAGER; INDIVIDUAL AND OFFICIAL CAPACITY; DERRICK BIEBER, UNIT MANAGER; INDIVIDUAL AND OFFICIAL CAPACITY; AL MADSEN, UNIT MANAGER; INDIVIDUAL AND OFFICIAL CAPACITY; JOSH KLEMIK, UNIT MANAGER; INDIVIDUAL AND OFFICIAL CAPACITY; TAMMI MERTINS-JONES, CULTURAL ACTIVITIES COORDINATOR; INDIVIDUAL AND OFFICIAL CAPACITY; ELIZABETH VITETTA, UNIT COORDINATOR; INDIVIDUAL AND OFFICIAL CAPACITY; BRITINEY ULMER, UNIT COORDINATOR; INDIVIDUAL AND OFFICIAL CAPACITY; MELISSA MATURAN, ADMINISTRATIVE | 4:17-CV-04116-KES <br><br> ORDER DENYING CBM DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

REMEDY COORDINATOR; INDIVIDUAL AND OFFICIAL CAPACITY; STEVE BAKER, MAJOR; INDIVIDUAL AND OFFICIAL CAPACITY; LINDA MILLER-HUNHOFF, MAIL SUPERVISOR; INDIVIDUAL AND OFFICIAL CAPACITY; SHARRON REIMANN, MAILROOM; INDIVIDUAL AND OFFICIAL CAPACITY; JORDAN STOREVIK, MAILROOM; INDIVIDUAL AND OFFICIAL CAPACITY; NICK ANDERSON, CORRECTIONAL OFFICER, SDSP; PRESTON PERRETT, CORRECTIONAL OFFICER; INDIVIDUAL AND OFFICIAL CAPACITY; JUDY JACOBS, CORRECTIONAL OFFICER; INDIVIDUAL AND OFFICIAL CAPACITY; LISA FRASIER, CORRECTIONAL OFFICER; INDIVIDUAL AND OFFICIAL CAPACITY; NICK REDDMAN, TEACHER; INDIVIDUAL AND OFFICIAL CAPACITY; DR. MARY CARPENTER, MD; INDIVIDUAL AND OFFICIAL CAPACITY; ER REGIER, MD; INDIVIDUAL AND OFFICIAL CAPACITY; BRAD ADAMS, PA-C; INDIVIDUAL AND OFFICIAL CAPACITY; JESSICA SCHREURS, RN; INDIVIDUAL AND OFFICIAL CAPACITY; HEATHER BOWERS, RN; INDIVIDUAL AND OFFICIAL CAPACITY; UNKNOWN DEPARTMENT OF HEALTH/CORRECTIONAL HEALTH SERVICE (DOH/CHS) EMPLOYEES, INDIVIDUAL AND OFFICIAL CAPACITIES; CBM CORRECTIONAL FOOD SERVICES, INDIVIDUAL AND OFFICIAL CAPACITIES; JOHN TWEIRWEILLER, CBM DISTRICT MANAGER; INDIVIDUAL AND OFFICIAL CAPACITY; UNKNOWN CBM EMPLOYEES, INDIVIDUAL AND OFFICIAL CAPACITIES; DELMER WALTER, CONTRACTED DOC ATTORNEY; INDIVIDUAL AND OFFICIAL CAPACITY; AND MARK

| BIDNEY, CONTRACTED DOC PARALEGAL; INDIVIDUAL AND OFFICIAL CAPACITY; | |
|---|---|
| Defendants. | |

**INTRODUCTION**

Plaintiff, James Elmer Shaw, is an inmate at the South Dakota State Penitentiary (SDSP) in Sioux Falls. Shaw filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). The court screened Shaw's complaint under 28 U.S.C. § 1915A and directed service. CBM Food Services, John Tweirweiller, and unknown CBM Food Service employees (CBM defendants) now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Docket 85. Shaw resists the motion. Docket 112. For the following reasons, the court denies the motion.

**FACTUAL BACKGROUND**

Viewing the evidence in the light most favorable to Shaw, the non-moving party, the facts are:

Shaw alleges several violations of his civil rights relating to the practice of his religion occurring at both SDSP and MDSP. Docket 1 ¶ 44. Shaw was an inmate at the Mike Durfee State Prison (MDSP) in Springfield, South Dakota from approximately April 2017 to June 2018. *Id.*; Docket 66. Prior to April 2017 and after June 2018, Shaw was incarcerated at the SDSP. Docket 1 ¶ 44.

Shaw's religion, Dorcha Cosàn (DC), follows a strict code of ethics called "The Nine Laws of Dorcha Cosàn" (NLDC). *Id.* ¶ 57. By adhering to the NLDC, Shaw can attain Godhood, connect with the source of his spiritual path, and perform "true Magick." *Id.* ¶¶ 58-60. Law II of DC mandates adherence to a religious diet. Docket 112 at 7. Shaw explains the diet as follows:

> I must purify my body by eating all natural, farm fresh, organic fruits and vegetables (they must be consumed raw, boiled, stewed or juiced) and grass fed, no-growth-hormone meats four (4) times daily (and between meals); I am unable to consume any foods with chemicals or artificial additives; DC calls this the 'Before Christ' diet, in essence, if my ancestors before Christianity could not fish it, hunt it, grow and harvest it, it is repugnant and violates my geise; All questionable ingredients are forbidden; I am unable to consume any beverages that are not fresh water from the spring (or boiled of impurities), all natural, organic herbal teas, whole "organic" milks (goat or bovine), freshly squeezed fruit and vegetable beverages four (4) times daily, with every meal (and between meals); All beverages must be made with all natural organic ingredients. I am unable to consume any liquids with chemical or artificial additives.

*Id.* When unable to consume food in accordance with Law II, Shaw "believes he is defiling himself by doing something that is completely forbidden by his religion." Docket 1 ¶ 71. Law II of DC also mandates that Shaw celebrate his holy day called Sabbats and Ebats with "Ritual and Feast." *Id.* ¶ 74.

CBM, a company contracted by the South Dakota Department of Corrections (DOC), provides all meals to inmates incarcerated at the SDSP and MDSP. Docket 85 at 2. CBM also provides meals to inmates who require a special diet due to their religious beliefs. *Id.* CBM does not provide Shaw a special diet due to his religious beliefs. Dockets 1 ¶ 69; Docket 112 at 2. When Shaw inquired about the denial of special diets for DC members, an unknown

4

CBM employee stated, " 'If you don't like it don't eat anymore.' " Docket 1 ¶ 70. Shaw is unable to follow his religious diet requirements. *Id.* ¶ 73.

CBM provides commissary products to inmates. Docket 85 at 2. CBM makes available certain products to allow religious inmates to conform to their sincerely held religious beliefs. *Id.* CBM did not make available any products to allow Shaw to conform to his sincerely held religious beliefs. Docket 112 at 2. CBM defendants falsely advertised that their commissary products complied with Shaw's religious requests and that their commissary products were a particular name-brand, price, and quantity. Docket 1 ¶ 112. CBM employees replaced the name-brand products with cheaper, generic, smaller quantity, non-compliant products without posting the changes. *Id.* ¶ 113. And Shaw did not receive notice of the changes until his order was delivered. *Id.* ¶ 114. CBM employees refused to reimburse Shaw. *Id.*

CBM has provided free special meals for mainstream religions on religious holidays. *Id.* ¶ 111. CBM provided Shaw celebratory meals. *Id.* ¶ 110. But these meals are the same as the main line general population meals. *Id.* And CBM raised the prices for a meal that is otherwise free. *Id.* On December 21, 2016, Shaw canceled the Yule Sabbat feast and celebration because CBM refused to allow Shaw to order "all natural" foods from Hy-Vee. *Id.* ¶¶ 124-26. Hy-Vee is an approved vender for the DOC. *Id.* ¶ 126. Hy-Vee has catered Buddhist, Jewish, and Muslim group meals. *Id.* ¶ 127.

CBM allowed other religious groups to buy and receive donations from outside approved venders for religious or cultural gatherings. *Id.* ¶ 108. CBM

defendants allowed other religions to purchase foods, commissary, and religious items from vendors other than CBM. *Id.* ¶ 117. This allowed other groups to comply with their dietary restrictions. *Id.* ¶ 108. CBM denied Shaw this ability. *Id.* Shaw can only purchase foods for religious gatherings and celebrations through CBM. *Id.* CBM also denied Shaw the ability to receive care packages from friends and family even though he is an indigent inmate. *Id.* ¶ 97.

## **STANDARD OF REVIEW**

When reviewing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court applies the same standard as that on a motion to dismiss under Rule 12(b)(6).[1] *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (noting that courts review a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion). "Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law." *Mills v. City of Grand*

---

[1] The court applies a similar standard when performing an initial screening of a complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A. Although the court is unaware of any Eighth Circuit precedent directly addressing this issue, the fact that a complaint survives screening should not foreclose subsequent Rule 12 motions even though the standards overlap. *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) (concluding that the screening and dismissal procedure in § 1915A "is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring"); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (noting that the Prison Litigation Reform Act "provides that a district court may dismiss an action filed in forma pauperis at any time if the court determines that the action fails to state a claim on which relief may be granted" (internal quotation omitted)).

*Forks*, 614 F.3d 495, 497-98 (8th Cir. 2010) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). "The facts pleaded by the non-moving party must be accepted as true and all reasonable inferences from the pleadings should be taken in favor of the non-moving party." *Id.* at 498. "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Id.* (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

Pro se complaints, " 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers[.]' " *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nonetheless, a pro se complaint must comply with the minimal requirements set forth in the Federal Rules of Civil Procedure, which specifically require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a pro se complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pro se complaint must "allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The court is not required to " 'supply additional facts, nor will [it] construct a legal theory that assumes facts that have not been pleaded.' " *Id.* (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). If the complaint

does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

## DISCUSSION

I. **Religious Land Use and Institutionalized Persons Act**

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §§ 2000cc-1(a)(1)-(2). Section three protects inmates' religious exercises "when the substantial burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. §§ 2000cc-1(b).

To establish a prima facie case under RLUIPA, a plaintiff must show "1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." *Smith v. Allen*, 502 F.3d 1255, 1276 (11th Cir. 2007) (abrogated on other grounds by *Sossamon v. Texas*, 563 U.S. 277 (2011)); *see also* 42 U.S.C. § 2000cc-1(a). If the plaintiff succeeds in making a prima facie showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Allen*, 502 F.3d at 1276. If the plaintiff fails to put forth a prima facie case, the court need not inquire further. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1228 (11th Cir. 2004).

"[W]hen faced with both a Free Exercise claim and a RLUIPA claim, a court must, as a threshold matter, inquire as to whether the prison has placed a 'substantial burden' on the prisoner's ability to practice his religion." *Gladson v. Iowa Dep't of Corr.,* 551 F.3d 825, 833 (8th Cir. 2009) (citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)). The Eighth Circuit Court of Appeals explained various ways for an inmate to make this threshold showing:

> [T]o demonstrate a substantial burden on the exercise of religion, a government policy or action "must significantly inhibit or constrain [religious] conduct or [religious] expression . . . ; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion."

*Van Wyhe v. Reisch,* 581 F.3d 639, 649 (8th Cir. 2009) (alterations in original) (quoting *Patel,* 515 F.3d at 813 n.7).

Here, CBM defendants argue Shaw's pleadings fail to demonstrate a substantial burden on his exercise of religion. Docket 85 at 8. CBM defendants do not dispute that RLUIPA applies to them or that Shaw's religious beliefs are sincerely held. *See* Dockets 85 & 115.

Shaw alleges that CBM defendants have substantially burdened his exercise of DC. Docket 1 ¶¶ 69-75. Law II of DC mandates that Shaw adhere to his religious diet. Docket 112 at 7. Shaw explains that he "must purify my body by eating all natural, farm fresh, organic fruits and vegetables . . . ." *Id.* Shaw cannot consume anything "with chemical or artificial additives." *Id.* Shaw

9

alleges that nothing the CBM defendants provide, on the mainline or through commissary, allows Shaw to adhere to Law II.

CBM defendants argue that Shaw failed to show the inadequacy of any alternative means by which he could practice his faith. *See Patel*, 515 F.3d at 811-12, 814-15; *Gladson,* 551 F.3d at 834. "Where a government practice burdens one means of practicing a religion, but leaves open alternative means, an inmate must show that the alternative means are inadequate to establish that the government practice imposes a substantial burden." *Rust v. Neb. Dept. of Corr. Servs. Religion Study Comm.*, No. 4:08CV3185, 2009 WL 3836544, at *8 (D. Neb. Nov. 12, 2009). In *Patel*, plaintiff was provided the option to purchase halal food from commissary when kosher entrees were inadequate. *Patel*, 515 F.3d at 811-12, 814-15. Because plaintiff could afford to purchase halal food, plaintiff could not show that this alternative means was inadequate. *Id.* In *Gladson*, plaintiff desired an eight-hour period of time for celebration but failed to show inadequacy of the three hours provided for celebration. *Gladson*, 551 F.3d at 834.

Shaw's case is distinguishable. First, Shaw alleges that *nothing* the CBM defendants offer him allow adherence to his religious diet. In *Patel* and *Gladson,* plaintiffs had alternatives. Shaw also alleges that the CBM defendants have denied Shaw's attempts to adhere to his religious diet through alternative means such as care packages or outside vendors. With no alternatives available, Shaw cannot show their inadequacy. Shaw's allegations adequately show how CBM defendants meaningfully curtail Shaw's ability to adhere to his

faith. Thus, Shaw's allegations demonstrate a genuine issue of material fact as to whether his ability to practice DC has been substantially burdened by the CBM defendants.

## II. 42 U.S.C. § 1983

"[T]o state a claim for relief under § 1983, a plaintiff must allege sufficient facts to show '(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right.'" *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (quoting *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)). "[Section] 1983 demands more than a simple claim that the [defendant] engaged in wrongful conduct and the [plaintiff was] deprived of constitutional rights. Indeed, to state a cause of action under § 1983, a plaintiff must plead facts that would tend to establish that the defendant's wrongful conduct *caused* the constitutional deprivation." *Id.* at 851 (emphasis in original).

### A. State Actor

First, Shaw must show that the CBM defendants acted under color of state law. In a § 1983 action, acting under the color of state law means that the defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "The injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of

11

conduct imposed by the state, or by a person for whom the state is responsible." *Parker v. Boyer*, 93 F.3d 445, 448 (8th Cir. 1996) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The government's " '[m]ere approval of or acquiescence in the initiatives of a private party' does not amount to state action." *Sabri v. Whittier Alliance*, 833 F.3d 995, 1000 (8th Cir. 2016) (alternation in original) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

In *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001), the Supreme Court stated that "there is no single test to identify state actions and state actors . . . ." *Id.* at 294. The Court undertook a fact-intensive inquiry to determine whether a private entity acted under color of state law in a § 1983 claim. *Id.* at 298. The Court applied its analysis from *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982). In *Rendell-Baker,* the Supreme Court determined that "a private school, whose income is derived primarily from public sources and which is regulated by public authorities," did not "[act] under color of state law when it discharged certain employees." *Id.* at 831.

First, the Court in *Rendell-Baker* reasoned that actions of private contractors are not state actions "by reason of [the contractor's] significant or even total engagement in performing public contracts." *Id.* at 841. Second, the Court held that state regulation, "even if 'extensive and detailed,' " does not make a private contractor's actions state action. *Id.* Third, the Court held that a private entity is a state actor not when the entity merely performs a public function, but when "the function performed has been 'traditionally the

12

exclusive prerogative of the State.'" *Id.* at 842 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974). Fourth, the court held that there was not a "symbiotic relationship" between the government and the private school. *Id.* at 843; *see Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961).

District courts in the Eighth Circuit have consistently "found that contracted food service providers at correctional facilities are government actors for purposes of § 1983 liability because the food service provider has assumed the state's constitutional obligation to provide a nutritionally adequate diet to inmates." *Jenkins v. Stutsman Cty. Corr. Ctr. Comm'r Chairman*, No. 3:13-CV-67, 2015 WL 1458158, at *6 (D.N.D. Mar. 30, 2015) (holding that an employee of a private company that contractually agreed to provide food services to a county jail was acting under color of state law); *Whitney v. Morse*, No. 5:14-CV-5028, 2014 WL 7339140 (W.D. Ark. Dec. 23, 2014) (unpublished opinion) (same); *Dale v. CBM Corr. Food Servs.*, No. 4:14-CV-4003, 2018 WL 3320842 (D.S.D. July 5, 2018) (same).

Here, Shaw has pleaded sufficient facts to scrutinize the relationship between CBM and the state. CBM holds the contract to provide a nutritionally adequate diet at both MDSP and SDSP. Providing a nutritionally adequate diet is a public function that has been traditionally the exclusive prerogative of the state. Thus, the CBM defendants are fairly considered state actors for purposes of § 1983 liability.

### B. Constitutional Violation

Shaw must also show that a constitutional right was violated in order to satisfy the second element of a § 1983 claim. In the screening order, the court found that Shaw stated a free exercise of religion claim arising under the First Amendment and an Equal Protection claim arising under the Fourteenth Amendment. Docket 7 at 26-29.

#### 1. Equal Protection

In order to establish an equal protection claim, Shaw must show that he is treated differently from similarly situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right. *Patel*, 515 F.3d at 815. To assert an equal protection claim based on the suspect classification of religion, an inmate must show that he is "denied a reasonable opportunity to pursue [his] faith as compared to inmates of other religions[.]" *Runningbird v. Weber*, 198 F. App'x. 576, 578 (8th Cir. 2006).

Shaw must also show that defendant's conduct was "motivated by intentional or purposeful discrimination." *Patel*, 515 F.3d at 816 (citing *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003)). "[P]rison officials may restrict the religious practices of inmates only if such deprivation is necessary to further legitimate penological interests." *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999) (citation omitted).

Defendants argue that Shaw failed to present evidence to suggest that the CBM defendants acted with the necessary discriminatory purpose. Docket

85 at 11. CBM defendants argue that Shaw's allegations show that the CBM defendants "tried to accommodate" Shaw's religion by identifying compliant commissary products. *Id.* But Shaw alleges that the CBM defendants "*falsely* advertised [that] their commissary products are in compliance with Shaw's religious requests that they are a certain name-brand item and a certain quality for an established price. CBM Employees then replace the name-brand products with cheaper, generic, less quality products, that do *not* comply with Shaw's religious requests, increase the price for these cheaper products and they do not post these changes" Docket 1 ¶¶ 112-13 (emphasis added). Shaw's allegations demonstrate a genuine issue of material fact as to whether CBM defendants acted with intentional or purposeful discrimination.

### 2. Free Exercise

"[I]n making a free exercise claim under 42 U.S.C. § 1983, the inmate must establish both the existence of a sincerely held religious belief *and* the infringement upon that belief by the challenged act or regulation." *Hayes v. Long*, 72 F.3d 70, 73 (8th Cir. 1995) (emphasis added). Here, CBM defendants again argue that Shaw failed to offer sufficient evidence to create a genuine issue of material fact as to whether his ability to practice his religion was substantially burdened. As determined above, Shaw sufficiently alleges CBM defendants substantially burden his religious practice and no adequate alternative currently exists. A genuine issue of material fact exists.

Thus, it is ORDERED that CBM defendants' motion for judgment on the pleadings (Docket 85) is denied.

DATED this 27th day of March, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE