UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

JAMES ELMER SHAW,

              Plaintiff,

vs.

DENNIS KAEMINGK, Secretary of
Corrections, in his individual and
official capacity; ROBERT DOOLEY,
Director of Prison Operations, in his
individual and official capacity; DARIN
YOUNG, Warden, in his individual and
official capacity; JENNIFER DRIESKE,
Deputy Warden, in her individual and
official capacity; JENNIFER STANWICK-
KLEMIK, Deputy Warden, in her
individual and official capacity;
DERRICK BIEBER, Unit Manager, in
his individual and official capacity;
TAMMI MERTINS-JONES, Cultural
Activities Coordinator, in her individual
and official capacity; ELIZABETH
EFFLING, Unit Coordinator, in her
individual and official capacity; STEVE
BAKER, Major, in his individual and
official capacity; LINDA MILLER-
HUNHOFF, Mail Supervisory, in her
individual and official capacity;
SHARRON REIMANN, Mailroom
Supervisory, in her individual and
official capacity; JORDAN STOREVIK,
Mailroom, in his/her individual and
official capacity; JUDY JACOBS,
Correctional Officer, in her individual
and official capacity; BRAD ADAMS,
PA-C, in his individual and official
capacity; CBM CORRECTIONAL FOOD
SERVICES, individual and official
capacities; JOHN TWEIRWEILLER,
CBM District Manager, in his individual

4:17-CV-04116-KES

ORDER GRANTING CBM
DEFENDANTS AND BRAD ADAMS'S
MOTIONS FOR SUMMARY
JUDGMENT AND ORDER ON
MISCELLANEOUS MOTIONS

| | |
|---|---|
| and official capacity; UNKNOWN CBM EMPLOYEES, individual and official capacities; and MARK BIDNEY, Contracted DOC Paralegal, in his individual and official capacity, | |
| Defendants. | |

Plaintiff, James Elmer Shaw, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. Pending before this court are Shaw's motion for reconsideration and motion for hearing. Dockets 214, 218. Also pending are CBM defendants' motion for summary judgment, Brad Adams's motion for summary judgment, and DOC defendants' motion for protective order. Dockets 193, 201, 219.

## I. Motion for Reconsideration

On January 8, 2020, Shaw moved for reconsideration. Docket 214. The orders Shaw is asking the court to reconsider are Dockets 139 and 140, which were filed on March 29, 2019. Shaw has not indicated what Federal Rule of Civil Procedure he is relying on. *See* Docket 214. "The Eighth Circuit has traditionally instructed courts to consider such motions either under Rule 59 or Rule 60(b)." *Moberly v. Midcontinent Commc'n*, No. 4:08-CV-04120-KES, 2010 WL 11681663, at *1 (D.S.D. Aug. 2, 2010). Under Rule 59(e), a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Here, Shaw's motion was filed well over 28 days after judgment was entered (Dockets 139, 140), so he is not entitled to relief under Rule 59(e).

Rule 60(b) authorizes a court to relieve a party from a final judgment under the following circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with a reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Shaw claims that he has discovered new evidence and that the court "did not credit Plaintiff's version of the disputed facts in light most favorable to Shaw[.]" Docket 214 at 1. Although Shaw claims that he discovered new evidence, he does not clearly present new evidence that was not already considered by this court. *See id* at 1-25. Shaw's entire motion seeks to relitigate why his claims should have survived summary judgment. *Id.*

Rule 60(b) motions cannot be used "to 'tender new legal theories' " or to reargue " 'on the merits.' " *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)) (first quoted material); *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999) (second quoted material). The only potentially applicable circumstance here is "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). But to obtain relief under Rule 60(b)(6), a party must show that "exceptional circumstances . . . denied the moving party a full and fair opportunity to litigate his claim and . . . prevented the moving party from receiving adequate redress." *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir.

2005) (citation omitted). Because Shaw cannot use a motion for reconsideration to reargue his claims on the merits and has had a fair opportunity to litigate his claims, his motion for reconsideration (Docket 214) is denied.[1]

## II.    Motion for Protective Order

Defendants Steve Baker, Derrick Bieber, Jennifer Drieske, Tammi Mertens-Jones, Linda Miller-Hunhoff, Jordan Storevik, Elizabeth Effling, Daring Young, Robert Dooley, Jennifer Stanwick-Klimek, and Dennis Kaemingk (DOC defendants) move for a protective order under Federal Rule of Civil Procedure 26(c). Docket 219. Shaw has not opposed this motion. A district court may issue a protective order, for good cause, to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1).

DOC defendants seek a protective order on: (1) personal information (prior names, birthdates, wage information); (2) educational background; (3) religious beliefs of the DOC defendants; (4) criminal history of the DOC defendants; (5) litigation history; (6) vendor information; (7) CBM contracts; (8) information on prison conditions; (9) a daily schedule of Shaw; and the (10) location of the prison cameras. Docket 220. The remaining claims against DOC defendants involve Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First Amendment-retaliation, access to the court, free

---

[1] Shaw moves for a hearing to be scheduled so he can "explain" and "elab[o]rate" on the arguments made in [his] motion for reconsideration [Docket 214][.]" Docket 218 at 1. Because this court has denied Shaw's motion for reconsideration (Docket 214), to hold a hearing would be unnecessary. Thus, Shaw's motion for hearing (Docket 218) is denied.

exercise of religion, and right to receive mail. Docket 139. DOC defendants claim that this information is irrelevant at the summary judgment stage or that the discovery requested is vague or goes beyond the scope of the claims against the DOC defendants. Docket 220 at 4-9. Because the remaining claims' analysis revolves around whether the DOC defendants substantially burdened Shaw's religion and whether DOC defendants have denied him access to the courts, the information DOC defendants are moving to protect does not have a connection to Shaw's remaining claims or the information would not be legally relevant at the summary judgment standard. Thus, DOC defendants' motion for protective order (Docket 219) is granted.

## III.   Motions for Summary Judgment

### A.   CBM Defendants' Motion for Summary Judgment

CBM Food Services, John Tweirweiller, CBM District Manager, and unknown CBM employees (collectively referred to as CBM defendants) move for summary judgment based on qualified immunity. Docket 193. Shaw's RLUIPA, First Amendment (free exercise), and Equal Protection claims against CBM defendants survived 28 U.S.C. § 1915A review. Docket 7 at 44.

#### 1.   Factual Background[2]

Viewing the evidence in the light most favorable to Shaw, as the non-moving party, the facts are: Shaw is an inmate at the South Dakota State Penitentiary and practices Dorcha Cosán, a form of Wicca. Docket 194-1 ¶¶ 2,

---

[2] Because defendants move for summary judgment, the court recites the facts in the light most favorable to Shaw. Where the facts are disputed, both parties' averments are included.

3, 6; Docket 199 ¶¶ 2, 3, 6. CBM defendants are "independently contracted by the DOC to prepare and serve meals to inmates in the DOC." Docket 199 ¶ 5; Docket 194-1 ¶ 5. Shaw claims that nine laws of Dorcha Cosán prevent him from performing any ceremonies with individuals who are not members of Dorcha Cosán. Docket 199 ¶ 7. Shaw claims that the other Wicca groups allow sex offenders to participate. *Id.* CBM defendants claim that Shaw has not "identified the ways in which the beliefs of the Dorcha Cosán religion significantly differ from the beliefs of the Wiccan religion." Docket 194-1 ¶ 7. Shaw's religious diet is a commandment that he must follow, and by not adhering to the religious diet, his soul is in peril. Docket 199 ¶ 10. Shaw's religious diet includes "all natural, farm fresh, organic fruits and vegetables," "grass fed, no-growth hormone meats," "fresh water from the spring . . . , all natural, organic herbal teas, whole 'organic' milks . . . , freshly squeezed fruit and vegetable beverages four (4) times daily with every meal (and between meals)." Docket 2 ¶¶ 164, 168.

CBM defendants claim that Shaw has requested foods with "chemical and/or artificial additives" that would allegedly violate Shaw's religion. Docket 194-1 ¶ 12. Shaw asserts that "nowhere within [his] request for religious or alternative diet and/or project applications has [he] 'specifically requested foods with chemical and/or artificial additives[.]" Docket 199 ¶¶ 11-12.

Shaw has been removed from the Wiccan group meetings because he has failed to attend, but Shaw claims he is unable to practice with the other Wiccan groups based on his beliefs. *Id.* ¶¶ 7, 26. Shaw claims that he tried to order

6

religious foods but was denied because he was required to order from CBM's menu. *Id.* ¶ 32. Shaw also claims that Young's answer to interrogatories said that Treiweiler is involved with religious project applications. *Id.* ¶ 16. CBM defendants assert that "[a]ll religious meal requests must be submitted to and approved by the DOC's Cultural Affairs Coordinator ('CAC') before an inmate is permitted to obtain the requested foods." Docket 194-1 ¶ 16. CBM defendants claim that the DOC notifies them on a quarterly basis when a religious meal has been approved. *Id.* ¶ 17. The CBM defendants do not review, approve, or deny the applications, and there are no signatures of the CBM defendants on Shaw's denials. *Id.* ¶¶ 18-19.

## 2. Legal Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation omitted). The underlying substantive law

identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48 (emphasis omitted).

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party." *Id.* at 250. Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such

pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "[W]hen dealing with summary judgment procedures technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

### 3.   Analysis

CBM defendants argue that they are entitled to qualified immunity because their actions have not amounted to constitutional violations. Docket 194 at 8. This court has already determined that CBM defendants are "fairly considered state actors for purposes of § 1983 liability" and thus considered to be government officials. Docket 138 at 13. To determine whether a government official is entitled to qualified immunity the court asks: (1) whether the facts alleged, viewed in the light most favorable to plaintiff, demonstrate the official's conduct violated a constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may address the elements in any order and if either of the elements is not met, then the official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The court will view the facts alleged in the light most favorable to Shaw and whether he has demonstrated a genuine issue of material fact that defendants have violated a constitutional right.

### a.   RLUIPA and First Amendment Free Exercise Claims

CBM defendants argue that they have "not substantially burdened [under RLIUPA and the First Amendment] Plaintiff's religious exercise because

CBM Defendants are not responsible for the approval and/or denial of Plaintiff's various religious meal accommodation requests." Docket 194 at 10. RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). To establish a prima facie claim against a state official under RLUIPA, an inmate " 'must show, as a threshold matter, that there is a substantial burden on his ability to exercise his religion.' " *Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009) (quoting *Singson v. Norris*, 553 F.3d 660, 662 (8th Cir. 2009). "Absent this showing, the state retains it's sovereign immunity." *Id.*

The Eighth Circuit Court of Appeals has stated various ways for an inmate to make RLUIPA's threshold showing:

> [T]o demonstrate a substantial burden on the exercise of religion, a government policy or action 'must significantly inhibit or constrain [religious] conduct or [religious] expression . . . ; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.'

*Van Wyhe*, 581 F.3d at 656 (alterations in original) (quoting *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 n.7 (8th Cir. 2008)).

An inmate must present some evidence to show that there is a substantial burden on his ability to exercise his religion. *Patel*, 515 F.3d at 814

10

(reasoning that the inmate could not meet his threshold showing because he offered only a "single, vague and unsupported statement" and "the record offer[ed] no evidence" regarding the inmate's claims). But whether an inmate "can establish the truth or sincerity of [his] belief is a matter to be decided at trial . . . ." *Van Wyhe*, 581 F.3d at 656.

Only state actors whose personal conduct caused the deprivation of a federal right are liable under § 1983. *Pulaski Cty. Republican Comm. v. Pulaski Cty. Bd. of Election Comm'rs.*, 956 F.2d 172, 174 (8th Cir. 1992) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Section "1983 liability requires personal involvement in or direct responsibility for actions resulting in [the] violation." *Carter v. Hassell*, 316 F. App'x 525, 525 (8th Cir. 2008) (citing *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)); *see also Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (dismissing a § 1983 case where a prisoner claimed that prison officials inappropriately took away his rosary because "none of the prison officials sued by him [were] responsible for this confiscation"); *Marchant v. City of Little Rock*, 741 F.2d 201, 204 (8th Cir. 1984) (dismissing a claim because the individual "had no knowledge of or connection to" the alleged violation).

Shaw has not raised a genuine issue of material fact that his religious rights have been substantially burdened by the CBM defendants' personal involvement. Shaw claims that the CBM defendants are responsible for denying his religious diet applications. *See* Docket 199 ¶ 16. To support his assertion, Shaw submitted an answer to an interrogatory by Warden Young in which

11

Young stated, "Project applications involve DW Dreiske, Tammy Mertens-Jones, Kevin Treiweiler-Brendan Stratton sits in usually, but doesn't have a decision-making role." Docket 179 at 12; Docket 199 ¶ 16. Department of Correction Policy for Inmate Religious and Alternative Diets states that "[a]n inmate requesting a religious or alternative diet must complete a Request of Religious or Alternative Diet form and submit the form to the facility's cultural activities coordinator or designee[.]" Inmate Religious and Alternative Diets 1.5.F.2(IV)(1)(B). "[I]nmate requests for specific food, or preparation of meals associated with a special religious or cultural ceremony/event. Such request must be made through a Project Application." Inmate and Religious Alternative Diets 1.5.2(IV)(2)(D). The Project Application has signature lines for the Unit Manager/Cultural Activities Coordinator and the Associate Warden. *Id.* at 7. The Request for Religious and Alternative Diet has a signature line for the Cultural Activities Coordinator. *See id.* at 6.

CBM defendants allege that the Cultural Affairs Coordinator is employed by the DOC and that all applications for requests for religious or alternative diet and project application are submitted to the Cultural Affairs Coordinator for approval. Docket 194 at 10. CBM defendants claim that Shaw's project applications have not been "reviewed, approved or denied, or signed off by CBM Defendants" and that after an application is approved, CBM defendants are directed to order the necessary food. *Id.* at 11.

Shaw does not raise a genuine issue of material fact that CBM defendants have been personally involved in substantially burdening his

religious rights. Shaw has not come forward with evidence to show that CBM defendants were personally involved in denying his Project Applications or his "Request for Religious and Alternative Diet" forms.[3] Thus, CBM defendants are entitled to qualified immunity on Shaw's RLUIPA claims and are entitled to judgment as a matter of law on this claim.

CBM defendants assert that they are also entitled to qualified immunity and judgment as a matter of law regarding Shaw's First Amendment free exercise-claim against them. *Id.* at 10. The First Amendment to the United States Constitution states in relevant part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Inmates clearly retain their First Amendment rights, including the right to the free exercise of religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). But limitations may be placed on the exercise of prisoners' constitutional rights in light of the needs of the penal system to deter crime, rehabilitate prisoners, and maintain institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 982 (8th Cir. 2014). Constitutional claims that would receive strict scrutiny in any other setting are evaluated under a lesser standard of scrutiny in a prison setting. *Turner v. Safley*, 482 U.S. 78, 81 (1987). A prison regulation may restrict a prisoner's constitutional rights if it is "reasonably related to legitimate

---

[3] Copies of Shaw's Request for Religious or Alternative Diet and Project Applications forms were filed by CBM defendants. Docket 194-3 at 1-8. CBM defendants' signatures or initials do not appear anywhere on the documents. *Id.*

penological interests." *Id.* at 89. The threshold question for any prisoner First Amendment free-exercise claim is whether prison officials have substantially burdened the plaintiff's sincerely held religious beliefs. *Gladson*, 551 F.3d at 833.

"When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause . . . and RLUIPA." *Patel*, 515 F.3d at 813. Because the significance of Shaw's religious belief was not at issue in his RLUIPA claim, CBM defendants are entitled to qualified immunity and judgment as a matter of law regarding Shaw's First Amendment claim because he has failed to show that the CBM defendants' had personal involvement with the denial of his requests and applications. Because Shaw has not raised a genuine issue of material fact that CBM defendants have substantially burdened Shaw's sincerely held religious belief, CBM defendants are entitled to qualified immunity and judgment as a matter of law on Shaw's First Amendment claims against them.

### b. Equal Protection

Shaw claims that CBM defendants have violated the equal protection clause of the Fourteenth Amendment. Docket 200 at 9. The equal protection clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. *Murphy*, 372 F.3d at 984 (internal quotation omitted). To show an equal protection violation, Shaw must show: (1) he is treated differently than a similarly situated class of inmates, (2) the different treatment burdens a fundamental right, and

(3) there is no rational relation to any legitimate penal interest. *Id.* (citing *Weiler v. Purkett*, 137 F.3d 1041, 1051 (8th Cir. 1998)). The Eighth Circuit explained for a prisoner to prevail on an equal protection claim, he "must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel*, 515 F.3d at 815 (internal quotation omitted). To assert an equal protection claim based on religion, an inmate must show that he was "denied a reasonable opportunity to pursue [his] faith as compared to inmates of other religions[.]" *Runningbird v. Weber*, 198 F. App'x 576, 578 (8th Cir. 2006). Shaw must also show that defendant's conduct was "motivated by intentional or purposeful discrimination." *Patel*, 515 F.3d at 816 (citing *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003)).

Shaw alleges that CBM defendants "decide whether project applications are approved." Docket 200 at 8. "Shaw recently attempted to order religious foods in compliance with his religious diet commandments which was denied due to Shaw having to order from the [CBM] menu only." Docket 199 ¶ 32. Shaw alleges CBM defendants have treated him differently from other religious inmates because:

> (1) CBM provides meals to inmates at SDSP and MDSP who require a special diet due to their religious beliefs . . . ; (2) other religious inmates are able to receive 'care packs' . . . ; (3) other religious inmates are permitted to partake in special religious festivities whereas Shaw is not; (4) . . . [other] venders, not CBM, [are allowed] to cater to the entire prison population at both SDSP and MDSP.

15

The opportunity for Shaw to order foods in compliance with his religious scruples has been denied.

Docket 200 at 9 (citations omitted). Although Shaw claims that CBM defendants are directly responsible for approving or denying applications, the actual project applications and requests have not been signed by CBM defendants. Docket 194-3 at 1-8. The emails about different vendors that have been allowed to bring food into the prison also do not indicate of CBM defendants' involvement. Docket 200-1 at 4-18. Shaw has not raised a genuine issue of material fact that CBM defendants have been personally involved in the alleged unlawful conduct. Thus, Shaw has not shown that a dispute of material fact exists that CBM defendants have intentionally or purposefully treated him differently than similarly situated religious inmates. CBM defendants are entitled to qualified immunity and judgment as a matter of law on Shaw's equal protection claim.

## B.  Brad Adams's Motion for Summary Judgment

Brad Adams, referred to as PA Adams in previous documents, moves for summary judgment as a matter of law. Docket 201. The only claim remaining against Adams is Shaw's Eighth Amendment claim of deliberate indifference of a serious medical need. Docket 7 at 36. Shaw filed a response to Adams's motion but did not file a statement of disputed facts. Docket 217.

### 1.   Factual Background

Viewing the evidence in the light most favorable to Shaw as the non-moving party, including Adams's statement of undisputed material facts, to which Shaw did not object, the facts are:[4]

Adams is an independent contractor who contracts with the South Dakota Department of Health. Docket 203 ¶ 1. Adams, like other medical staff, does not believe that a "handicap cell is necessary for [Shaw.]" *Id.* ¶ 3. Shaw has a lower bunk order. *Id.* ¶ 4. Adams has "no authority or input" into the policies created by the DOC. *Id.* ¶ 2 The DOC determines "whether the low bunk is in a two or three bunk stack." *Id.* ¶ 5. In his response to Adams's motion for summary judgment, Shaw "believes the record shows Plaintiff has shown Defendant Adams was deliberately indifferent to Plaintiff's serious medical needs and that there are genuine disputes to material facts that war[ran]t a trial." Docket 217 at 2.

### 2.   Legal Standard

Pro se filings must be liberally construed. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Even with this construction, "a pro se [filing] must contain specific facts supporting its conclusions." *Martin*, 780 F.2d at 1337. Summary judgment on all or part of a claim is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[4] Under Local Rule 56.1(D), "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts."

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp.,* 477 U.S. at 322-23.

Once the moving party has met this burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley*, 415 F.3d at 910 (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "Further, 'the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, the dispute must be outcome determinative under prevailing law.' " *Id.* at 910-11 (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)). The facts, and inferences drawn from those facts, are " 'viewed in the light most favorable to the party opposing the motion' " for summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### 3.    Analysis

Shaw claims that Adams's motion for summary judgment is untimely and that Adams was required to file his motion on or before August 27, 2018. Docket 217 at 1. On November 21, 2019, this court set a new scheduling order that ordered "all defendants' motions for summary judgment must be filed by

January 7, 2020." Docket 195 at 5. Adams moved for summary judgment on December 20, 2019. Docket 201. Thus, Adams's motion was timely filed.

Shaw's remaining claim against Adams is an alleged violation of the Eighth Amendment. Docket 7 at 36. The Eighth Amendment prohibits cruel and unusual punishment including prison officials' deliberate indifference to the medical needs of inmates. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. To state an Eighth Amendment claim, Shaw must show "a substantial risk of serious harm to the victim," and "that the prison official was deliberately indifferent to that risk of harm. . . ." *Letterman v. Does*, 789 F.3d 856, 861-62 (8th Cir. 2015) (citing *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).

Shaw claims he has "osteochondroma of the right proximal fibula, has no ACL's in his knees, needs full knee replacements[,] . . .wears metal knee braces, . . . has low back pain due to his bottom three (3) vertebrae having no fluid in them and has arthritis in his knees and lower back." Docket 1 ¶ 153. Shaw experiences "pain and suffering when caring for himself, performing

manual tasks such as walking, sitting or even standing too long. . . ." *Id.* ¶ 154. To show that defendants knew of the substantial risk of serious harm, Shaw does not need to show actual knowledge, the court "can infer knowledge if the risk was obvious." *Letterman*, 789 F.3d at 862. It is enough to show that the defendant " 'had been exposed to information concerning the risk and thus must have known about it.' " *Id.* (quoting *Farmer*, 511 U.S. at 842).

Shaw also "must show the officials 'knew that their conduct was inappropriate in light of' the risk to the prisoner." *Id.* (quoting *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009)). "Knew" in this context means more than negligence and is "akin to the criminal rule of 'recklessness.' " *Id.* (quoting *Farmer*, 511 U.S. at 839-40). "Generally, the actor manifests deliberate indifference by 'intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed.' " *Id.* (quoting *Krout*, 583 F.3d at 567). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Mere disagreement on medical judgment or deciding to pursue different courses of treatment between medical professionals does not violate the Eighth Amendment. *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993). "Prisoners do not have a constitutional right to any particular type of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (citing *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1998)). The Eighth Amendment is not

violated by prison officials "when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Id.* (citing *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994)).

Shaw claims that Adams refused to give him a handicap cell. *See* Docket 1 ¶ 295. Dr. Regier also believed that Shaw did not need to be placed in a handicap cell. Docket 97 ¶ 4. At most, Shaw's allegations rise to the level of a disagreement on how he should be treated, and he has not shown that a genuine issue of material fact exists that Adams was deliberately indifferent to Shaw's serious medical need. Thus, Adams's motion for summary judgment is granted.

## CONCLUSION

Thus, it is ORDERED:

1. That Shaw's motions for reconsideration and hearing (Dockets 214 and 218) are denied.

2. That DOC defendants' motion for a protective order (Docket 219) is granted.

3. That CBM defendants' motion for summary judgment (Docket 193) is granted.

4. That Brad Adams's motion for summary judgment (Docket 201) is

granted.

Dated July 15, 2020.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE